MOSES W. FAITOUTE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82387.   Promulgated July 12, 1938.

*John A. Conlin, C. P. A.*, for the petitioner.
*Charles H. Curl, Esq.*, for the respondent.

OPINION.

SMITH: This is a proceeding for the redetermination of a deficiency in income tax for 1932 in the amount of $60,083.53. The petition alleges that the respondent erred in the determination of the deficiency (1) in treating as taxable dividends $94,000 which represented money borrowed by the petitioner from the Faitoute Iron & Steel Co., of which the petitioner was the sole stockholder; (2) in disallowing the deduction from gross income of $42,537.50 sustained on the sale of $100,000 par value of City of Asbury Park, New Jersey, bonds; and (3) in disallowing the deduction of a capital net loss of $18,512.50 sustained on the sale of 100 shares of stock of National Newark & Essex Banking Co. The respondent has conceded the third point in issue.

The petitioner is a resident of Short Hills, New Jersey. He filed his income tax return for 1932 with the collector of internal revenue at Newark, New Jersey. The return shows a net income of $40,-637.13. In the determination of the deficiency the respondent added

to the net income reported dividends in the amount of $94,000, a loss of $42,537.50 on the sale of $100,000 City of Asbury Park bonds, and a capital net loss of $18,512.50 on the sale of National Newark & Essex Banking Co. stock.

The petitioner owns all of the capital stock of the Faitoute Iron & Steel Co., a New Jersey corporation, which is a distributor of iron and steel products. The number of shares outstanding in 1932 was 301. This corporation was profitable and had accumulated a large surplus prior to 1930. Its undivided profits at the end of 1931 were $974,524.33, and at the end of 1932, $945,895. The earnings and dividends paid upon the stock from 1929 to 1934, inclusive, were as follows:

| Year | Earnings | Dividends | Year | Earnings | Dividends |
|------|---------|-----------|------|----------|-----------|
| 1929 | ? | $44,268 | 1932 | $20,944.25 | $62,608 |
| 1930 | ? | 52,374 | 1933 | 26,540.36 | 2,408 |
| 1931 | $14,413.49 | 2,408 | 1934 | 39,233.64 | 53,879 |

In 1918 the corporation loaned to the petitioner $95,866.69. This loan was in an open account entitled "Exchange Account." In this account loans by the corporation to officers and employees were debited when made and credited when paid back. A debit balance in the account has always been carried as accounts receivable on the corporation's books of account and in its balance sheets. The petitioner never paid any interest upon the money which he borrowed from the corporation in 1918. He paid the money back to the corporation on April 9, 1936.

The corporation also made loans to the petitioner during the year 1932 as follows:

| | |
|---|---|
| March 29, 1932 | $60,000 |
| April 5, 1932 | 10,000 |
| April 6, 1932 | 29,000 |
| Total | 99,000 |

These loans were charged to the petitioner in the "Exchange Account." The petitioner paid back $5,000 of the $99,000 on June 13, 1932. The balance of $94,000 was paid back to the corporation as follows:

| | |
|---|---|
| October 31, 1934 | $30,000 |
| December 5, 1934 | 20,000 |
| 12, 1934 | 15,000 |
| 20, 1934 | 20,000 |
| 28, 1934 | 9,000 |

Upon the petitioner's books of account the amounts borrowed from the corporation have always been carried as liabilities.

Inasmuch as the petitioner paid no interest upon his borrowings from the corporation the respondent, in the determination of the deficiency, has treated not the $99,000 but the $94,000, the net amount borrowed in 1932 and not paid back at the close of the year, as a dividend received by the petitioner.

In January 1931 the petitioner purchased $50,000 Asbury Park 5¾ percent bonds due April 1, 1934, at a cost of $51,687.50. On June 1, 1931, he purchased $25,000 par value 6 percent Asbury Park bonds due December 1, 1933, and $25,000 par value 6 percent bonds due December 1, 1934, at a cost of $51,000, a total of $102,687.50. On December 27, 1932, he sold these bonds to J. S. Rippel & Co., Newark, New Jersey, at market price, receiving therefor $60,150, plus $936.12 of accrued interest. The memorandum of the purchase received by the petitioner from J. S. Rippel & Co. reads as follows:

J. S. RIPPEL & Co.
    *18 Clinton Street*
Newark: Market 3-3430
New York: Rector 2-2295

                                            NEWARK, N. J.
                                      *December 27, 1932*

as of Dec. 29
Bought of Mr. Moses W. Faitoute, 182 Frelinghuysen Avenue, Newark, N. J.

| Quantity | Security | | Total |
|---|---|---|---|
| $25,000.00 | Asbury Park, N. J. temp. loan 6% December 1, 1933 at 72.90 and interest | $18,225.00 | |
| | Interest 28 days | 116.67 | |
| | | | $18,341.67 |
| $50,000.00 | Asbury Park, N. J. temp. loan 5¾% April 1, 1934 at 55.90 and interest | $27,950.00 | |
| | Interest 2 months 28 days | 702.78 | |
| | | | $28,652.78 |
| $25,000.00 | Asbury Park, N. J. temp. loan 6% December 1, 1934 at 55.90 and interest | $13,975.00 | |
| | Interest 28 days | 116.67 | |
| | | | 14,091.67 |
| | | | $61,086.12 |

At or about the same time the same or a like amount of bonds were purchased from J. S. Rippel & Co. by the Faitoute Iron & Steel Co. The amount paid therefor is not shown by the record. The petitioner neither at the time of the sale of the bonds nor later entered into any agreement with the corporation for the repurchase of the bonds and he has never repurchased the bonds from the corporation.

The first question for consideration is whether the petitioner is liable to income tax upon the $94,000 representing his net borrowings from the Faitoute Iron & Steel Co. in 1932. The respondent has not

treated the $99,000 borrowed in 1932 as a dividend, but has held that $94,000, which represents the borrowings for the year 1932 not paid back by the end of the year, is taxable to the petitioner as a dividend received from the corporation.

Section 115 (a) of the Revenue Act of 1932 provides that:

* * * The term "dividend" when used in this title * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

The argument of the respondent appears to be that since the petitioner was the sole stockholder of the corporation it could not make a loan to him. We are of the opinion, however, that this is not so. If the money advanced was in good faith loaned by the corporation to the petitioner then it was not a dividend.

All of the evidence goes to show that the money advanced by the corporation to the petitioner in 1932 was a loan and not a distribution of profits. The petitioner testified that he had agreed in the early part of 1932 to lend to New Jersey municipalities large amounts of money. He had expected that certain bonds owned by him which matured in 1932 would be paid off at maturity and that he would have the funds in hand to make the loans which he had agreed to make. The municipalities were not, however, able to collect a sufficient amount of taxes to redeem the bonds which matured in the early part of 1932. The petitioner was, therefore, under the necessity of making his loans to other municipalities by borrowing the money from some source. He could have borrowed the money from a bank, since his credit was good, but the corporation had funds in the bank which were drawing little or no interest, and instead of going to a bank for a loan he went to the corporation. He testified that it was always his intention to repay the loan and his contention is supported by the fact that the corporation treated the advance as a loan, and the petitioner on his books of account treated the amount received from the corporation as an account payable. The corporation's claim against the petitioner for the amount borrowed was an asset. Unquestionably, in case of bankruptcy of the corporation the petitioner would have been liable for the repayment of the money.

Petitioner further testified that, although the corporation had a large surplus, a large part of it was needed in its business. The corporation was contemplating the erection of a building which would have cost from $300,000 to $400,000 to construct. Additional land had been acquired for the erection of the building and a considerable amount of work has been done upon the construction of the building. Due to the depression, however, the building has not been completed.

It is further to be noted that the corporation paid out $62,608 in dividends in 1932, or at the rate of $208 per share, although its earnings for the year were only $20,944.25.

In *Harry E. Wiese*, 35 B. T. A. 701, it is stated at page 704:

* * * It is obvious that a withdrawal by a stockholder of funds of a corporation does not necessarily constitute a distribution of profits, even if the corporation has an accumulation of profits in excess of the withdrawal; and such withdrawal may or may not, in the light of that fact alone, be said to be a dividend. A corporation may lend its funds, including earnings, with or without interest, on open account or upon notes, secured or unsecured; and such privilege is not restricted to the lending of its funds to persons other than stockholders. Therefore, whether the withdrawals of corporate funds by petitioner, here in controversy, constituted loans or dividends in the years when withdrawn must be determined from the facts in the record before us; * * *

Cf. *Christopher* v. *Burnet* (App. D. C.), 55 Fed. (2d) 527, affirming 13 B. T. A. 729; *M. Jackson Crispin*, 32 B. T. A. 151.

The respondent appears to place his claim that the loans were not made in good faith largely upon the fact that the corporation received no interest upon them. Further, that it was not until after the respondent audited the petitioner's tax return for 1932 that he repaid to the corporation the moneys which had been advanced to him in 1932.

We are of the opinion that the fact that the petitioner paid to the corporation no interest upon the advances made to him in 1932 is not determinative of the issue, because if the corporation saw fit to lend money without interest that is a matter with which the Government is not concerned. We are also of the opinion from the evidence of record that it is immaterial that the petitioner did not repay the loans made to him until after the respondent made an audit of his returns for 1932. There can be no question but that it was always the intention of the petitioner to repay the loans made to him. The Board, therefore, is of the opinion that the $94,000 in question constituted a bona fide loan by the corporation to the petitioner and not a distribution of the corporation's profits taxable to the petitioner as a dividend.

In his income tax return for 1932 the petitioner deducted from gross income a loss of $42,537.50 on the sale of $100,000 Asbury Park bonds. The respondent disallowed the deduction of the claimed loss for the reason, as stated in his deficiency notice, that "these transactions are not of a nature giving rise to losses allowable as deductions for income tax purposes." At the hearing of this proceeding counsel for the respondent did not state his position with regard to the disallowance of the claimed losses other than to say "a man can not deal with himself." The assumption is that the basis of his claim is that, since the petitioner sold the Asbury Park bonds and Faitoute Iron &

Steel Co. at the same time purchased the same bonds or a like amount of the same issues from J. S. Rippel & Co., the loss sustained is not a deductible loss.

There is no question in this proceeding but that the Asbury Park bonds were sold at their fair market price. Although a sale by a stockholder to a corporation of which he owns all of the stock is subject to close scrutiny, a loss sustained upon a bona fide sale is deductible from gross income. Cf. *Commissioner* v. *Eldridge* (C. C. A., 9th Cir.), 79 Fed. (2d) 629, affirming 30 B. T. A. 1322; *Commissioner* v. *McCreery* (C. C. A., 9th Cir.), 83 Fed. (2d) 817; *Jones* v. *Helvering* (App. D. C.), 71 Fed. (2d) 214; certiorari denied, 293 U. S. 583; *David Stewart*, 17 B. T. A. 604; *William H. Albers*, 33 B. T. A. 373; *Ralph Hochstetter*, 34 B. T. A. 791.

Since all of the evidence shows that the sale of the $100,000 par value of Asbury Park bonds was made at market prices the claimed loss is a legal deduction from gross income.

*Judgment will be entered under Rule 50.*