Gerald Patrick DIETRICK; Anita Lea Dietrick, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Nos. 88–1986, 88–1998.

United States Court of Appeals, Sixth Circuit.

Argued June 16, 1989.

Decided Aug. 10, 1989.

Stephen A. Kappers (argued), Robert J. Hollingsworth, Cors, Bassett, Kohlhepp, Halloran & Moran, Cincinnati, Ohio, for Gerald Patrick Dietrick and Anita Lea Dietrick.

William F. Nelson, I.R.S., Robert A. Bernstein, Kimberly S. Stanley (argued), U.S. Dept. of Justice, Tax Div. Appellate Section, Gary R. Allen, Acting Chief, William S. Rose, Jr., Asst. Atty. Gen., Dept. of Justice Tax Div., Washington, D.C., for C.I.R.

Before MARTIN and JONES, Circuit Judges, and COOK *, District Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

The taxpayers [1] appeal the Tax Court's decision finding deficiencies in his 1980 and 1982 returns in the amounts of $70,864.45 and $38,421.03. The following issues are raised on appeal: were the expenses paid by the taxpayer on behalf of a closely held corporation to "protect or promote" his business? Was the taxpayer partially reimbursed through an incorrect deduction for expenses he paid on behalf of a closely held corporation? Consideration of these issues involves a review of the Tax Court's findings of fact.

■ We review the Tax Court's finding of fact under the clearly erroneous standard. *Rose v. Commissioner*, 868 F.2d 851, 853 (6th Cir.1989).

The taxpayer owned and operated Dietrick Sales and Services as a sole proprietorship engaged principally in the sale and service of filtration equipment from 1959 until 1982 when the business was incorporated. In 1977, the taxpayer acquired the assets of Windecker Industries, Inc., a business which had been engaged in the manufacture of airplanes constructed with a composite material known as NUF, a nonwoven, unidirectional fiberglass material. In 1979, the taxpayer established the Composite Aircraft Corporation, and transferred to it all the assets used in the manufacture of the aircraft except the machine which produced NUF, in exchange for 310 shares of the new corporation.

Composite issued three different offering circulars in 1979, 1980, and 1981 in the hope of attracting the capital necessary to begin production. The 1979 circular stated:

> In some instances, Dietrick has advanced funds to cover the expenses indicated [above] and he will be reimbursed therefor from the proceeds of this offering. He may also elect in the future to advance funds on behalf of the Company to cover expenses and he will be reimbursed for such advance from the proceeds of this offering available at the time.

The 1979 and 1980 offerings produced a total of $160,800 in capital. The 1981 offering produced $9,750. Prior to the 1981 offering, the $160,800 from the first two offerings was advanced to the taxpayer in what the 1981 Offering Circular termed a "loan." The 1981 circular did state that the taxpayer would repay the $160,800 "pursuant to promissory notes executed in favor of the Company." However, no promissory note was ever executed, nor was a time for repayment set, and the

---

* The Honorable Julian A. Cook, Jr., United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Anita Lea Dietrick is a party to this action only because she signed the joint returns prepared by her husband.

taxpayer was not obligated to pay interest on the "loan." Composite subsequently borrowed $65,000 from a financial institution, and when the note came due, the taxpayer personally paid $25,000 on the debt.

Composite hired George Alther as an engineer in 1979, but because of the risky nature of the Composite undertaking, the taxpayer agreed that if Composite did not become profitable, he would employ Alther in his filtration business. Because of Composite's lack of financing, in 1980 and 1981 Alther in fact worked for the taxpayer's filtration business. He devoted approximately 90 percent of his time to the filtration business, and 10 percent to Composite.

In 1980, 1981, and 1982, the taxpayer utilized and designed in his books Account 22 to pay expenses incurred by Composite, including the salary of George Alther. For 1980, these expenses totalled $137,638.31, and the taxpayer deducted most of these expenditures as ordinary and necessary expenses of his sole proprietorship on Schedule C of his 1980 return. Similarly, the 1981 Account 22 expenditures of $70,959.53 were included on Schedule C of the taxpayer's 1981 return. These expenses helped to generate a net operating loss of $84,392.97 for the taxpayer in 1981 which carried over to 1982. In 1982, the taxpayer deducted a total of $84,392.97 for the taxpayer in 1981 which was carried over to 1982. In 1982, the taxpayer deducted a total of $4,082.37 in Account 22 expenditures.

Following a trial the Tax Court concluded that the taxpayer was not entitled to claim a deduction for the expenses which he incurred on behalf of Composite. In particular, the Tax Court rejected the taxpayer's argument that he had paid Composite's expenses in order to protect and promote his sole proprietorship, and hence was entitled to deduct the expenses he incurred for Composite. The court found that "petitioner's primary motive for paying Composite's expenses was to establish a new business rather than protect or promote his sole proprietorship."

The Tax Court further concluded that even if the taxpayer did fall within the protect-or-promote exception, he still would not be entitled to deduct all of the expense he incurred on behalf of Composite because he was reimbursed by the transfers totalling $131,800 (the $160,800 "loan" less the $25,000 paid by the taxpayer on Composite's $65,000 debt to the financial institution). The court rejected the taxpayer's argument that the $160,800 was a loan, not reimbursement for the expense he incurred on behalf of the corporation, specifically finding "on the basis for the record as a whole that petitioner has failed to establish that he had any obligation to repay, or intent to repay, these funds to Composite."

The Tax Court did accept the taxpayer's argument that he was entitled to deduct 90 percent of the wages paid to Alther because 90 percent of work he did during the years in question was on behalf of the taxpayer's filtration business. However, the court held that the deduction "must be reduced to the extent that petitioner was reimbursed for such expenditures by Composite." The government has not appealed the Tax Court's holding that the taxpayer may deduct 90 percent of Alther's salary. The taxpayer, however, has appealed the finding that he was reimbursed for a portion of those wages by the "loan" for Composite.

█ A taxpayer may deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. . . ." 26 U.S.C.A. § 162(a) (Supp.1989). It has long been the general rule that a taxpayer may not deduct expenses incurred on behalf of another taxpayer's business. *E.g. Deputy v. duPont*, 308 U.S. 488, 494, 60 S.Ct. 363, 366, 84 L.Ed. 416 (1940). Similarly, a shareholder ordinarily may not deduct expenses he has incurred on behalf of a corporation. "When the only return is that of an investor, the taxpayer has not satisfied his burden of demonstrating that he is engaged in a trade or business since investing is not a trade or business and the return to the taxpayer, though substantially a product of his services, legally arises not from his own trade or business but from that of the corporation." *Whipple v. Commissioner,*

373 U.S. 193, 202, 83 S.Ct. 1168, 1174, 10 L.Ed.2d 288 (1963).

The taxpayer acknowledges the general rule, but argues that he falls within a narrow exception carved out by the Tax Court for cases in which the taxpayer's payment of the business expenses of another serves to "protect or promote" his own business. *See generally, Lohrke v. Commissioner,* 48 T.C. 679 (1967). The Tax Court rejected this argument as we do. The Tax Court found that even if the payments did fall within the narrow exception to the general rule, the taxpayer still could not deduct the bulk of the payments because the "loan" from Composite to the taxpayer partially reimbursed him for the expenditures in question.

In *Lohrke,* the Tax Court set forth a two-prong test for determining whether a taxpayer falls within the narrow "protect or promote" exception to the general rule against a taxpayer deducting expenses incurred on behalf of the business of another. First, the taxpayer must demonstrate that his "ultimate purpose in paying [the other taxpayer's] obligation was [not] to keep [the other taxpayer] in existence, thereby perhaps realizing a return on his payment through corporate profits, ... [but rather] his purpose was to protect or promote his own business realizing a return on his payment through continued profits in that business." 48 T.C. at 688; *see also Snow v. Commissioner,* 31 T.C. 585, 591 (1958). The taxpayer must also show that the expense is an ordinary and necessary expenditure in furtherance of *his* trade or business—not in furtherance of the trade or business of the other taxpayer. 48 T.C. at 688.

■ In applying the first prong of the *Lohrke* test, courts have insisted that there be "a clear proximate danger to the taxpayer and ... a payment made to protect an existing business from harm." *Young & Rubicam, Inc. v. United States,* 187 Ct.Cl. 635, 410 F.2d 1233, 1243 (1969). Where the taxpayer fails to demonstrate "a direct nexus between the purpose of the payment and the taxpayer's business or income producing activities," the deduction will not be allowed. *Lettie Page Whitehead Foundation, Inc. v. United States,* 606 F.2d 534, 538 (5th Cir.1979).

■ As the Tax Court found, the taxpayer did not meet his burden of showing that his "ultimate purpose" in this case was to "protect or promote" his filtration business, and not to earn a return on his investment in Composite. The taxpayer's sole proprietorship received no business whatever from Composite during the years in question. The taxpayer essentially argues that the sole proprietorship had a great interest in the success of Composite because it hoped to earn large profits selling NUF produced by the machine which it owned. This argument, however, is undercut by the fact that the taxpayer agreed to provide NUF at cost to Composite. Thus the taxpayer has not shown that the sole proprietorship benefited in any way from the continued existence of Composite.

The taxpayer also argues that he was forced to pay the expenses of Composite in order to protect his business reputation. The Tax Court has recognized that where a taxpayer has demonstrated a proximate relationship between the failure of a corporate enterprise and the "possibility of extensive adverse publicity concerning petitioner's involvement in the defunct corporation" which has the potential to harm the taxpayer's business, payment of the corporation's debts may serve to "protect or promote" the taxpayer's business and thus may be deducted. *Jenkins v. Commissioner,* 47 T.C.M. 238, 246 (1983). In *Jenkins,* the Tax Court based its conclusion that the taxpayer's business could be potentially harmed by the adverse impact of the failure of the corporation upon the taxpayer's reputation on extensive testimony from both the taxpayer and an expert witness. This testimony demonstrated both that the failure of the corporation would adversely affect the taxpayer's reputation and that the harm to the taxpayer's reputation had a proximate relationship to potential harm to his business. In contrast, as the Commission points out, the taxpayer has introduced no evidence showing that the failure of Composite will have an ad-

**340**

verse impact on his business reputation, nor has he demonstrated that it could harm his filtration business.

In sum, the Tax Court's conclusion that the taxpayer's "primary motive for paying Composite's expenses was to establish a new business" is, at the very least, plausible in light of the record considered as a whole. Thus the Tax Court's finding that the taxpayer's payment of Composite's expenses did not serve to "protect or promote" his own business was not "clearly erroneous."

■ We turn now to the Tax Court's finding that the advances from Composite to the taxpayer were not loans. "[T]he intention of the parties is the controlling factor in determining whether or not advances should be termed as loans." *Berthold v. Commissioner*, 404 F.2d 119, 122 (6th Cir.1968). The Tax Court bases its finding that the parties intended the advance in this case to be reimbursement for expenses paid, not a loan to the taxpayer on (1) the fact that no note was executed by the parties; (2) the fact that the taxpayer was not obligated to pay interest; (3) the fact that no time was set for repayment of the "loan"; (4) the incongruity of a corporation in desperate need of financing making such a large loan; (5) the fact that there was no collateral securing the "loan" other than the taxpayer's shares in the corporation; (6) the fact that the 1979 offering circular indicated that the taxpayer would be reimbursed for the expenses he paid on behalf of the corporation; and (7) the fact that the taxpayer indicated that he may not have to repay the "loan" if Composite failed. All of these factors may be considered by the fact finder in determining whether or not an advance may be considered a loan. *Alterman Foods v. United States*, 505 F.2d 873, 878–79 (5th Cir.1974); *Berthold*, 404 F.2d at 122. Clearly the Tax Court's conclusion that the parties intended the payment as reimbursement for the expenses paid by the taxpayer and not as a loan is plausible in light of these facts.

The decision of the Tax Court is affirmed.