Leonard C. JAQUES, Sybil J. Jaques,
Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent–Appellee.

No. 90–1657.

United States Court of Appeals,
Sixth Circuit.

Argued March 11, 1991.

Decided June 5, 1991.

Rehearing Denied July 8, 1991.

Robert J. Zinkel, Jr., Detroit, Mich., Joseph Falcone (argued), Southfield, Mich., for petitioners-appellants.

Abraham N.M. Shashy, Jr., Chief Counsel, I.R.S., Gary R. Allen, Acting Chief, Regina S. Moriarty, Ann Belanger Durney (argued), U.S. Dept. of Justice, Appellate Section, Tax Div., Washington, D.C., for respondent-appellee.

Before MARTIN and MILBURN, Circuit Judges, and WELLFORD, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Leonard C. and Sybil J. Jaques appeal the decision of the United States Tax Court finding that certain withdrawals made by Leonard Jaques from his wholly-owned professional corporation were taxable dividends under § 316 of the Internal Revenue Code, 26 U.S.C. § 316, rather than non-taxable loans.[1] This determination resulted in deficiencies in their income tax for the taxable years 1983, 1984, and 1985, in the amounts of $24,255, $120,384, and $301,970, respectively. *See* 58 T.C.M. (CCH) 1026 (1989). For the following reasons, we affirm the decision of the tax court.

Leonard C. Jaques is an attorney specializing in the practice of plaintiffs' class action law. In 1971, Jaques formed a professional corporation, Leonard C. Jaques, P.C. From the time of incorporation, Jaques has always been the sole shareholder of the corporation. Jaques' basis in the stock of the corporation was $20,000. Prior to the years at issue, the corporation had established a defined pension plan. Beginning in 1977 and continuing throughout the years in issue, Jaques began making withdrawals from the corporation. Jaques used the amounts withdrawn from the corporation during the years at issue to pay day-to-day personal living expenses. The following amounts were withdrawn:

| Year Ended October 31 | Amount |
|---|---|
| 1983 | $ 14,687 |
| 1984 | 275,682 |
| 1985 | 803,398 |

These withdrawals were reflected as "Accounts Receivable–Officer" by bookkeeping entries made on the books and records of the corporation. Jaques did not execute notes for these withdrawals nor was there a maturity date set for repayment. There was no collateral pledged as security for the repayment of the amounts withdrawn by Jaques. On its income tax returns, the corporation reflected the loans to stockholders as assets as follows:

| Year Ended October 31 | Amount |
|---|---|
| 1983 | $ 764,166.72 |
| 1984 | 1,007,119.02 |
| 1985 | 1,820,837.25 |

Withdrawals were also made by the corporation from its pension plan. These withdrawals were reflected in executed promissory notes carrying an interest rate of 15 percent. During the years at issue, the corporation made monthly interest payments to the pension plan. The amount of these loans for the years 1983, 1984, and 1985 were $14,750.00, $56,818.77, and $165,502.05, respectively.

During each of the years in issue, the corporation paid Jaques a salary of $150,000.24. During 1984 and 1985, the corporation also reported on its W–2 Forms $37,093 and $131,416, respectively, as other compensation paid to Jaques for imputed interest on the withdrawals.

Jaques' personal financial statement prepared as of December 17, 1987, noted that "Leonard C. Jaques owes his law firm $2,645,000.00, but since the professional corporation stock is wholly owned by Leonard C. Jaques, the 'loan' is a wash." Jaques' personal financial statement prepared

---

1. Sybil J. Jaques is a party to this action only because she and her husband filed joint income tax returns for the years in question.

as of November 30, 1988, reflected loans payable to the corporation in the amount of $3,042,000. In the note to the financial statement, petitioner disclosed that "The $3,042,000.00 represents monies I have borrowed over the years from the P.C. to be repaid whenever convenience may focus."

This case illustrates the tension which arises when individual professional practitioners are permitted to create separate corporate identities. For the better part of the history of our country, lawyers were prohibited from utilizing such incorporation. *See, e.g., In re N.H. Bar Ass'n,* 110 N.H. 356, 266 A.2d 853 (1970); *In re Florida Bar,* 133 So.2d 554 (Fla.1961). Currently, every state and the District of Columbia have statutes permitting such a procedure. *See* Phillips, McNider, & Riley, *Origins of Tax Law: The History of the Professional Service Corporation,* 40 Wash. & Lee L.Rev. 433, 439 (1983). The taxpayer in this case, a lawyer by trade, like many accountants, physicians, architects, and other professionals, found it to be financially beneficial to incorporate his legal practice as a professional corporation. *See* Cooper, *The Taming of the Shrewd: Identifying and Controlling Income Tax Avoidance,* 85 Colum.L.Rev. 657, 665 n. 24 (1985). There is Leonard Jaques the private citizen and Leonard Jaques the professional corporation. In the eyes of the federal tax law, these are two separate taxable entities; in reality, they are a single individual. Not surprisingly, problems frequently arise when the two entities engage in transactions which have federal tax implications.

In the typical business context, business persons engage in business transactions with one another at arms-length. Therefore, it is usually safe to assume that a particular transaction is entered into because each party concludes that it is in his own self-interest to do so. This assumption breaks down, however, when the parties engaging in the transaction are in reality the same individual; the self-interest test usually employed to judge a contemplated transaction ceases to be applied by *each* party to the transaction. In this case, Leonard Jaques the professional corporation "loaned" Leonard Jaques the private citizen large amounts of money. Because in reality these transactions resulted in nothing more than Jaques lending himself his own money, it is very difficult to characterize the relationship between Jaques and his corporation as one of debtor and creditor. The potential for tax evasion is clear. A sole shareholder of a professional corporation could withdraw large sums from the corporation without incurring any tax liability simply by characterizing the withdrawals as loans, repayment of which could be postponed indefinitely.

The tax court determined that the amounts withdrawn by Jaques were not intended to be loans, but were taxable distributions under Section 316 of the Internal Revenue Code. 26 U.S.C. § 316. The court found that Jaques failed to prove that the withdrawals were intended to be loans because he did not offer any "objective manifestations of contemporaneous intent to repay" other than his "own unsupported testimony." Other factors which the tax court relied upon in reaching its conclusion were: (1) the withdrawals were not represented by interest-bearing notes; (2) Jaques did not periodically repay the principal or interest; (3) the withdrawals were unsecured and were not subject to a fixed repayment schedule; (4) the withdrawals were in proportion to his holdings as the sole shareholder; and (5) the corporation had substantial current earnings but did not pay any dividends during this period.

■ Jaques argues that the tax court erred in finding that the withdrawals in question were constructive dividends and not loans. We may not disturb the tax court's findings of fact unless they are clearly erroneous. *Commissioner v. Duberstein,* 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); *see also Rose v. Commissioner,* 868 F.2d 851, 853 (6th Cir.1989) (citing cases). There is some dispute as to whether the loan verses dividend question is one of fact or law. *See, e.g., Busch v. Commissioner,* 728 F.2d 945 (7th Cir.1984) (whether shareholder's withdrawals from corporation constituted loans or dividends

is purely a question of fact); *Dolese v. United States*, 605 F.2d 1146 (10th Cir. 1979) (question of debt or dividend normally a question of fact, but when there is no dispute in the evidence, whether the facts add up to debt or equity is a question of law), *cert. denied*, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980); *Alterman Foods, Inc. v. United States*, 505 F.2d 873 (5th Cir.1974) (whether operative facts add up to dividend or loan is a question of law). This court has held on a number of occasions that whether a payment is a loan or a dividend is a factual question. *Dietrick v. Commissioner*, 881 F.2d 336 (6th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 565, 107 L.Ed.2d 559 (1989); *Estate of DeNiro v. Commissioner*, 746 F.2d 327 (6th Cir. 1984); *Wilkof v. Commissioner*, 636 F.2d 1139 (6th Cir.1981) (per curiam); *Berthold v. Commissioner*, 404 F.2d 119 (6th Cir. 1968). Thus, we review the tax court's determination that the withdrawals made by Jaques were constructive dividends and not loans only for clear error.

■ Whether the withdrawals made by Jaques from his professional corporation are treated for tax purposes as loans or dividends turns on the intention of the parties at the time the withdrawals were made. *Dietrick*, 881 F.2d at 340; *Livernois Trust v. Commissioner*, 433 F.2d 879 (6th Cir.1970); *Berthold*, 404 F.2d at 122. To determine whether the taxpayer intended to repay the withdrawals, courts have looked to a number of objective factors. *See Alterman*, 505 F.2d at 876 n. 6 (listing factors). The taxpayer's testimony that he intended to repay is one factor which is considered, but such self-serving testimony "can appropriately be viewed with some diffidence unless supported by other facts which bring the transaction much closer to a normal arms-length loan." *Berthold*, 404 F.2d at 122; *Tyler v. Tomlinson*, 414 F.2d 844, 850 (5th Cir.1969) ("We therefore look not to mere labels or to the self-serving declarations of the parties, but to more reliable criteria of the circumstances surrounding the transaction.").

■ Jaques argues that the tax court erroneously relied upon the fact that his corporation did not pay any dividends during the time in issue to support its finding that the withdrawals were not loans. Jaques argues that throughout this period his corporation was prohibited under Michigan law from declaring a dividend. The applicable statute states, "[d]ividends may be declared or paid and other distributions may be made out of surplus only." Mich. Comp.Laws § 450.1351(2).[2] The "surplus" referred to in § 450.1351 can be either earned surplus or capital surplus. Earned surplus is defined as "the portion of the surplus of a corporation that represents the accumulated net earnings, gains and profits, after deduction of all losses, that has not been distributed to shareholders as dividends or transferred to stated capital or capital surplus...." Mich.Comp.Laws § 450.1107(1). Jaques argues that because the corporation had negative retained earnings during 1983 and 1984, it was unable legally to declare a dividend under Michigan law.

This argument, even if technically correct, does not address the critical issue, namely whether the amounts withdrawn by Jaques from his corporation were dividends for the purposes of the federal tax law. Under § 316 of the Tax Code, the term "dividend" is defined as a distribution made out of either earnings and profits of the taxable year or earnings and profits accumulated after February 28, 1913. Thus, Jaques' argument would be persuasive if his corporation lacked sufficient earnings and profits for his withdrawals to be considered dividends under the Code. The phrase, "earnings and profits" is not specifically defined by the Code, however, some courts have defined the phrase as, "the amount of gross receipts minus the cost of producing them." 1 J. Mertens, *Law of Federal Income Tax*, § 38C.01; *Divine v. Commissioner*, 500 F.2d 1041, 1050–1051 (2d Cir.1974). Additionally, the calculation of earnings and profits bears no exact relation to either taxable income or to earnings as determined by normal account-

**2.** This statute has since been repealed as of    October 1, 1989.

ing practice. 1 J. Mertens at § 38C.01; *see also Estate of Uris*, 605 F.2d 1258, 1265 (2d Cir.1979). Jaques has not argued that his corporation lacked sufficient earnings and profits for his withdrawals to be considered dividends under the Code. Presumably his corporation had sufficient earnings and profits to cover his withdrawals and have them properly classified as dividends. The fact that Jaques might have been prohibited under Michigan law from formally declaring a dividend does not preclude a finding that his withdrawals were dividends under § 316.

Jaques next argues the tax court erred in holding that without a written loan agreement the advances he received from his corporation were presumptively dividends. However, the tax court's decision did not presume the advances were dividends and not loans merely because of the absence of a written loan agreement. The tax court simply cited the absence of a written loan agreement as one factor which helped illuminate the true intent of the parties. This was entirely proper. *Berthold*, 404 F.2d at 122.

To support his argument, Jaques cites *Faitoute v. Commissioner*, 38 B.T.A. 32 (1938). In that case, the tax court held that a sole stockholder's withdrawal of money from his corporation was a loan even though there was no written loan agreement, no security interest given, and no interest charged. The court held that the absence of these arrangements did not make the loan a dividend "[i]f the money advanced was in good faith loaned by the corporation to the petitioner...." *Id.* at 35. Jaques argues that *Faitoute* stands for the proposition that such factors as no written loan agreement, no repayment agreement, and no charged interest are irrelevant as a matter of law in determining the taxpayers intent when repayments are made on the loans. *Faitoute*, however, seems to hold that the absence of these arrangements is not dispositive of the issue; it does not make them irrelevant.

Jaques next argues that the tax court erred in not according adequate consideration to his partial repayment of the loan proceeds in determining whether his withdrawals were legitimate loans. Jaques did repay approximately $48,000 of the $1,220,000 withdrawn during the years at issue. This repayment was addressed by the tax court and found to be "small" and "sporadic." The case which Jaques relies upon to support this argument, *Ravano v. Commissioner*, 26 T.C.M. (CCH) 793 (1967), considered *total* repayment within a reasonable time as more indicative of the true arrangement than the absence of notes evidencing the corporation's indebtedness or maturity date for the repayment. *Id.* at 800–801. There is no total repayment within a reasonable time in this case.

Finally, Jaques argues that the tax court's findings that he had no obligation to ever repay the corporation the withdrawals is erroneous because he was in fact borrowing from the pension plan and only using the corporation as a conduit. Jaques was the trustee of his corporation's pension plan and as such, he bore a nondelegable fiduciary duty to ensure that these loan proceeds were repaid. If not, he would be personally liable to repay the entire sum under the Employment Retirement Income Security Act, 29 U.S.C. § 1109(a). This argument, however, would only be applicable to $237,070.82 of the near $1,220,000, that was withdrawn over this period. This left nearly one million dollars to be repaid "whenever convenience may focus."

Jaques claims throughout his brief that the reason these loans were necessary was that his corporation was experiencing financial difficulty because he received unfavorable results in three major cases. This, he claims, destroyed the corporation's working capital and required Jaques to take a substantial salary reduction. Because of this situation, Jaques claims that the corporation had to borrow funds from its pension plan. The following exchange took place between Jaques and counsel when he testified in the tax court:

Q: What was the need for borrowing from the pension funds?

A: To just to keep going.

Q: In other words, working capital?

A: Working capital, yes.

Q: Would it also be a source of funds for borrowings by you from the corporation?

A: Yes.

Q: Is the corporation expecting to enforce the collection of your borrowing from it?

A: Yes.

Q: Why would they want to enforce it?

A: Well, to stay within the mandates of the law you must enforce it. It had to be enforced with regard to the pension problem. Yes, it had to be. There's no question about it.

During the years in issue the corporation borrowed a total of $237,070.82 from the pension fund. There is "no question" that as to this amount, the law requires repayment and will hold Jaques personally liable. However, during the relevant period Jaques "borrowed" a total of $1,219,767.00 from his professional service corporation. Subtracting these two figures yields 982,-696.18 which came directly from the current earnings of his corporation. There is some question whether requirement of repayment of this amount would be enforced by the corporation. Furthermore, the fact that his corporation had sufficient cash available to extend these large loans to Jaques belies his argument that his corporation was experiencing financial difficulty.

█ There is no doubt that a withdrawal by a controlling stockholder from his corporation *can* be considered a loan for federal income tax purposes. *See Alterman Foods, Inc. v. United States*, 611 F.2d 866, 869, 222 Ct.Cl. 218 (1979). Something more is required, however, than the mere representations of the parties that the withdrawals were considered to be loans. There must be at least some evidence of the corporate formalities which usually accompany such transactions. Otherwise, a sole owner of a corporation could have his personal expenses paid by the corporation as a loan and postpone repayment indefinitely, thus escaping the double taxation which is normally incident to the corporate form. Because cases of this type are unique on their facts, we do not attempt to establish the line between those withdrawals that

will be considered loans and those that will not. We simply note that the present case exceeds that line. We have little difficulty with the facts before us in affirming the decision of the tax court.