97 F.3d 1452
 78 A.F.T.R.2d 96-6458, 96-2 USTC P 50,495
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
TOOL PRODUCERS, INC., Petitioner-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 95-2056.
 United States Court of Appeals, Sixth Circuit.
 Sept. 10, 1996.
 
 Before: BOGGS and NORRIS, Circuit Judges; and HOOD,* District Judge.
 PER CURIAM.
 
 
 1
 The petitioner appeals from a decision of the Tax Court upholding the Commissioner's determination of a deficiency in its tax payments. The Tax Court ruled that certain corporate income could not be deducted as having been paid as "compensation" to corporate officers, and denied the petitioner's claim that its tax due should not have been increased. We affirm.
 
 
 2
 * Tool Producers, Inc. (the "Company") is a tool and die shop making automobile parts. Ownership is equally shared by two brothers, Frederick and Joseph Biasci. The company had gross receipts in 1988 of $12,925,089. In that year, Frederick, the president of the company, reported an income of $122,836, and Joseph, an officer, reported an income of $108,050.
 
 
 3
 The IRS audited the Company's tax records in April 1986. It found that the Company had failed to include as income money obtained from the sale of scrap metal. For the four years from 1983 to 1986, the unreported income totaled about $250,000. The Company admitted its error in not including the sales revenue as income, but argued that it was entitled to an offsetting deduction because the sales revenue was immediately distributed to the Biasci brothers as compensation for services. The merits of that claim were not addressed in 1986, because the Company had so much loss to carry forward during those tax years that the question was moot. Tax Court Opinion, August 22, 1995 ("Opinion"), at 17.
 
 
 4
 The Company continued to receive revenue from the sale of scrap metal. It again failed to report this revenue as income on its 1987 and 1988 tax returns. After the IRS began a second audit in 1991, the Company filed an amended tax return for those years. The amendment reported $84,188 as income from the sale of scrap metal in 1988 and explained that the failure to do so earlier was the result of "an inadvertent bookkeeping error." Opinion at 5. Although the revenue from the sale of scrap metal was reported as corporate income, the Company again claimed that it was entitled to a corresponding deduction because the revenue was immediately paid to the Biasci brothers as compensation for their services.
 
 
 5
 The Biasci brothers have reported the income from the sale of scrap metal on all of their personal income tax returns. The income was added to the 1983 to 1986 returns after the 1986 audit. In 1987 and 1988, the income was reported on Form 1040 as "scrap income," but not listed on the W-2 form from the Company as compensation.
 
 
 6
 This case arises out of the Commissioner's determination that the Company owes an additional $87,430 of 1988 income tax and a $4,371.50 (five percent) penalty for negligence. The deficiency has two components. The Commissioner claims that the Company's taxable income in 1988 was understated by $84,188 because the Company was not entitled to deduct this amount (representing revenue from the sale of scrap metal) as compensation to the Biasci brothers for their services. The Commissioner also claims that the loss carry forward to 1988 was overstated by $285,070 because of the Company's mistaken compensation deduction for the years 1983 to 1986. The tax liability stated by the Company on its return for 1988 was decreased because of loss carried forward from these earlier years. If the deduction during those years was improper, then the loss carried forward would not be as large and, as a result, the tax liability in 1988 would be higher.
 
 II
 
 7
 Section 162(a)(1) of the Tax Code allows a deduction from a corporation's taxable income equal to "a reasonable allowance for salaries and other compensation for personal services actually rendered." Courts have held that the test for deductibility has two elements: the payments must be (i) reasonable as compensation, and (ii) intended to compensate for services performed. Whitcomb v. Commissioner, 733 F.2d 191, 193 (1st Cir.1984). The burden is on the taxpayer to prove entitlement to a deduction. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933). In the Biascis' case, the Tax Court focused on the second factor, whether the payments were intended to compensate for services. It found that the Company did not introduce sufficient evidence to prove a contemporaneous intent to compensate for services in any of the relevant tax years. Opinion at 10-11.
 
 
 8
 The Tax Court's holding in regard to the tax years from 1983 to 1986 is easy to support. The individual income tax returns of the corporate officers for those years did not, at the time they were filed, indicate any compensation in the form of proceeds from the sale of scrap metal. There is no corporate document nor any affidavit from any witness indicating a contemporaneous intent to compensate. In addition, in response to the 1986 audit, each Biasci brother amended his personal income tax return to state as follows:
 
 
 9
 Receipts from employer corporation were originally thought to be loan repayments and advances but were subsequently determined to be taxable income categorized as commissions.
 
 
 10
 Opinion at 8. The Tax Court held that since neither of the Biasci brothers thought that the distributions were compensation at the time they were made, the distributions could not have been made with an intent to compensate.
 
 
 11
 The question of whether the 1988 distributions were made with the intent to compensate is more difficult. Both Biasci brothers timely reported the scrap metal payments as "income" on their 1988 tax returns (although they listed it as "other income" rather than "wages and salary"). In denying the Company a deduction for this distribution, the Tax Court held:
 
 
 12
 [T]hese returns, standing alone, are insufficient to carry petitioner's burden. Again, no corporate records or Forms 1099 were offered as exhibits, no stipulations dealt with petitioner's intent, and there was no testimony from petitioner's officer-shareholders.
 
 
 13
 Opinion at 11.
 
 
 14
 Reflection suggests that the Tax Court's reasoning is weak on two levels. First, small corporations may not keep a great deal of records, and it seems unfair to require minutes when the two owners have an informal conversation to decide: "Let's keep the income from the scrap metal for ourselves. We deserve it after all this hard work we've been doing." Second, the Tax Court was not deciding the Company's case after a full evidentiary proceeding. The case was before the court pursuant to Tax Court Rule 122(a), which allows the court to decide a case without scheduling a trial and without requiring the parties to appear before it. In its petition, the Company claimed that the sales revenues were given to the officers as compensation. In its answer to the petition, the Commissioner provided only a general denial of the sentence containing the allegation of contemporaneous intent. Having offered paper proof, it seems wrong to require the Company to put on witnesses in regard to a question of historical intent that the government did not directly challenge with contradictory paper evidence.
 
 
 15
 On the other hand, there is support for the Tax Court's ruling that the Company did not meet its burden of proof on the question of contemporaneous intent to compensate. First, the disbursements were not included as compensation on the Biasci brothers' W-2 forms. Second, the Company provided no affidavits, not even from the brothers themselves, supporting the claim of contemporaneous intent.
 
 
 16
 The brothers' only reply to the claim that they did not met their burden of proof is that they reported the amounts as "other income" (neither wages nor dividends) on their tax return, and the government did not offer contrary proof of intent. See Appellants' Brief at 8 (quoting Grace Brothers v. Commissioner, 173 F.2d 170 (9th Cir.1949) ("it is axiomatic that uncontradicted evidence must be followed")). The brothers argue that if the payments are "income" and are not "dividends" (because they are not listed as dividends on the tax return) then the payments must be "compensation" for services. Since the brothers filled out their own tax returns, they must have believed in 1988 that the payments were intended as compensation for services.
 
 
 17
 We do not believe that the officers' personal tax forms are sufficient evidence to meet the Company's burden of proof on the issue of its intent to compensate. In determining the intent behind a corporate distribution, we have held that a court should "look not to mere labels or to the self-serving declarations of the parties, but to more reliable criteria of the circumstances surrounding the transaction." Jacques v. Commissioner, 935 F.2d 104, 107 (6th Cir.1991) (quoting Tyler v. Tomlinson, 414 F.2d 844, 850 (5th Cir.1969)). The tax form characterization of the payments is both a "mere label" and a "self-serving declaration." In addition, the tax return forms are facially ambiguous. They can be read to indicate that the payments were compensation, because they were non-dividend income from the company. Or they can be read to indicate that they were not compensation, because they were not reported as "wages" or "salary" on the correct line of the form. Standing alone, then, they are not adequate evidence to support the petitioner's burden of proof.
 
 III
 
 18
 Cases like this one will always present evidentiary difficulties. The basic question is whether an officer/shareholder with control over the finances of a close corporation intended to pay himself as an officer or as a shareholder. (It is to the officer/shareholder's advantage to pay himself as an officer, because of the "double" tax on the distribution of corporate profits in the form of dividends.) Obviously, the law cannot rely on the statements of the officer himself, especially when they are general statements on a tax return form rather than specific testimony (either as a witness on the stand or in a deposition or affidavit) subject to immediate cross-examination. Cf. Pepsi-Cola Bottling Co. v. Commissioner, 528 F.2d 176, 179 (10th Cir.1975) (company's burden to prove intent to compensate and reasonableness of compensation is heavier when the payee was both an officer and a shareholder). Of critical importance to the question of intent are the circumstances surrounding the payment. This is probably one reason for the inclusion of the word "reasonable" in § 162(a)(1) in the first place--if a payment is reasonable in light of the officer's contribution to the company and the officer says he intended to compensate himself for services, then a court can assume that the officer is telling the truth about his intent. To this extent, the inquiry into intent and the inquiry into reasonableness partially overlap.
 
 
 19
 The main importance of the intent requirement--the part of it that is separate from the inquiry into the objective circumstances of the payment--is the threshold burden on the Company to (i) produce a clear, contemporaneous writing by the Company stating that the payments were intended as compensation, or (ii) produce witnesses to testify that, despite the absence of appropriate paperwork, the payments were intended as compensation. If this burden is met, a court can proceed to look into the circumstances surrounding the payments, both to determine if the allegation of intent is credible, and to determine if the level or amount of payments is reasonable in light of the purposes of the Tax Code. See Elliotts, Inc. v. Commissioner, 716 F.2d 1241, 1245-48 (9th Cir.1983) (five factors to consider in deciding if compensation is reasonable).
 
 
 20
 Placing such a burden on a company makes sense because it requires the company to keep some record of the nature of the payments. If such records are kept, the company will be forced to think about what it really intends various disbursements to be, and the Internal Revenue Service will have an easier time tracing and checking the appropriateness of the company's various representations. One should remember that "the propriety of a deduction does not turn upon general equitable considerations.... Rather it depends on legislative grace...." New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934). It is therefore permissible to condition a deduction on the fulfillment of some basic standard of adequate record-keeping.
 
 
 21
 When the doctrine is viewed in this manner, it becomes fairly easy to decide the present case. The Company needs to show a clear, contemporaneous writing demonstrating that the payments were intended as compensation. The tax returns of its officers are neither clear (because they do not list the payments as salary) nor contemporaneous (because the statements are made at tax time by the recipient rather than at the time of disbursal by the company). Note, however, that it is not necessary to produce the minutes of a corporate meeting (although such minutes would be sufficient). It would be sufficient to merely have written the purpose of the payment on the checks that went to the Biasci brothers. It would also have been sufficient for the Company to report the payments as compensation to the Biasci brothers on their W-2 forms. In the absence of a clear, contemporaneous writing, it would have been enough to put a capable witness with personal knowledge of the circumstances of the payments on the stand to testify. It may even have been enough to take a deposition or affidavit from such a witness. Since the Company did none of these things, they have not met their burden to show a contemporaneous intent to compensate. Therefore, the Tax Court did not commit a clear error by denying the Biasci's petition regarding the 1988 scrap metal payments.
 
 IV
 
 22
 The Company also challenges the Tax Court's ruling that the Commissioner is entitled to a negligence penalty of five percent of the 1988 deficiency. The taxpayer has the burden of proving a lack of negligence in failing to pay the full amount of taxes due. Pasternak v. Commissioner, 990 F.2d 893, 902 (6th Cir.1993) (citing Skeen v. Commissioner, 864 F.2d 93, 96 (9th Cir.1989)). Negligence is a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Skeen, 990 F.2d at 902. The Internal Revenue Service informed the Company in 1986 that the revenue collected from the scrap metal sales was reportable income. The Company failed to report it timely in 1987 and 1988. Given the warning and the subsequent failure to report the income as legally required, the Tax Court did not err in holding that the Company acted negligently. Indeed, the Company barely disputes the propriety of the negligence penalties in its brief. Appellant's Brief at 10.
 
 V
 
 23
 The judgment of the Tax Court is AFFIRMED.
 
 
 
 *
 The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation