T.C. Memo. 1998-95

UNITED STATES TAX COURT

MARGUERITE BARROW AND WILLIAM D. BARROW, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15978-91.                    Filed March 5, 1998.

William D. Barrow, pro se.

<u>William R. McCants</u>, for respondent.

MEMORANDUM OPINION

COLVIN, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income tax and additions to tax for 1983,
1984, and 1985 as follows:

## William D. and Marguerite Barrow

| | | Additions to tax | | |
| | | Sec. | Sec. | Sec. |
| Year | Deficiency | 6651(a)(1) | 6653(a)(1) | 6661 |
|------|-----------|-----------|-----------|------|
| 1983 | $126,082 | $31,520 | $7,224 | $31,521 |
| 1984 | 9,194 | n/a | 460 | 2,298 |

## William D. Barrow

| | | Additions to tax | | |
| | | Sec. | Sec. | Sec. |
| Year | Deficiency | 6651(a)(1) | 6653(a)(1) | 6661 |
|------|-----------|-----------|-----------|------|
| 1985 | $18,688 | $965 | $1,245 | $4,672 |

Respondent also determined that petitioners are liable for additions to tax of 50 percent of the interest due on the deficiency under section 6653(a)(2) for each year in issue.

After concessions,[1] the sole issue that we must decide is whether petitioner William D. Barrow is liable for income tax on $175,000 which he received in 1983 and which he contends is income of a closely held corporation. We hold that he is.

---

[1] Respondent concedes that petitioner Marguerite Barrow is an innocent spouse as to all adjustments and penalties determined against her, except for the $3,023 in interest income received in 1983 from her savings accounts, resulting in a deficiency for her of $704, plus interest as provided by law. Petitioner concedes all of the other adjustments (such as failure to report in income legal fees, interest, and stock received as payment for services; the disallowance of capital gain on the Holiday Isle transaction; and additions to tax) in this case except whether he was taxable in 1983 on $175,000 of the $250,000 from the Holiday Isle transaction.

Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. References to petitioner are to William D. Barrow.

## Background

The parties submitted this case fully stipulated under Rule 122.

A.   Petitioners

Petitioners were married during 1983 and 1984 and were divorced in 1985. Petitioner lived in Niceville, Florida, and Mrs. Barrow lived in Crestview, Florida, when they filed the petition in this case.[2]

Petitioner was an attorney licensed to practice in Florida in the years in issue.[3] He practiced law through the law partnership of Barrow & Holley. He also participated in several real estate transactions during the years in issue in a capacity other than as an attorney.

In 1990, petitioner was convicted of violating 18 U.S.C. sections 2 and 1956(a)(3)(B) and (C) (laundering drug money) and

---

[2] Petitioners filed joint income tax returns for 1983 and 1984. Petitioner filed his 1985 individual tax return as an unmarried person. Respondent issued notices of deficiency to petitioners for 1983 and 1984 and to petitioner for 1985. Petitioners filed one petition for 1983, 1984, and 1985.

[3] Petitioner was not admitted to practice law in Florida at the time of trial.

31 U.S.C. sections 5322(a) and 5324(3) (structuring a transaction to avoid a cash transaction report).

B.    Dogwood Acres, Inc.

Dogwood Acres, Inc. (Dogwood Acres), was a closely held Florida corporation and a subchapter C corporation.  Petitioner and his brother each owned 49 percent of its stock.  Mrs. Barrow and petitioner's mother and father owned the other 2 percent.

Dogwood Acres owned a family farm in northern Florida. Dogwood Acres' taxable years ended on March 31.  Dogwood Acres did not file an income tax return or report any income or loss for its taxable year ending on March 31, 1984.

C.    The Holiday Isle Property Transaction

George Dana Harris (Harris) was one of petitioner's clients during the years in issue.  Harris bought, sold, and developed real estate through fictitious business names including Saudi Corp. and Fujimo Corp.  On September 21, 1983, Harris was convicted of tax evasion under section 7201 and willful failure to file under section 7203.

In the 1970's, petitioner owned an interest in a parcel of real property in northern Florida known as Holiday Isle.  He lost it to Southeast First National Bank of Miami because of a foreclosure suit in 1979.  In 1981, Harris, acting as Saudi

Corp., bought Holiday Isle in a joint venture with Wallace C. Yost (Yost).

In March 1983, petitioner received a check for $50,000 from Harris. Petitioner deposited it in his personal checking account on March 29, 1983. On March 30, 1983, petitioner wrote a $43,250 personal check payable to Dogwood Acres. He did not report the $50,000 as income or deduct the $43,250 payment to Dogwood Acres.[4]

In July 1983, Saudi Corp. paid petitioner $25,000 by endorsing to petitioner a third-party check payable to Saudi Corp.

In August 1983, Lakeco Corp. issued common stock to petitioner as consideration for various services which petitioner provided to the corporation and to Harris, its principal. Lakeco Corp.'s sole asset was a parcel of real property in northern Florida. In March 1984, Lakeco Corp. sold that property and paid petitioner $62,500 of the proceeds to redeem his stock.[5]

In 1983, Yost sold his interest in Holiday Isle to Harris, acting as Saudi Corp. In September 1983, Harris, acting as Saudi Corp., sold Holiday Isle to an unrelated party. When the Holiday Isle transaction closed, the closing agent paid a $250,000

---

[4] Petitioner concedes that the $50,000 is income to him.

[5] Petitioner did not report the $62,500 as income. Petitioner concedes that the $62,500 is income to him.

commission to petitioner. None of the Holiday Isle closing documents show that Dogwood Acres was involved in the transaction. Neither petitioner nor Harris told Yost that petitioner or Dogwood Acres was involved in the Holiday Isle joint venture.

Petitioner deposited the $250,000 in his personal checking account on September 22, 1983. Also on that day, he wrote checks from that account for $100,000 to Dogwood Acres, $75,000 to Saudi Corp. as a loan, and $60,000 to Valparaiso Bank & Trust Co. Saudi Corp. paid $75,000 to Dogwood Acres in December 1983. Thus, Dogwood Acres received $100,000 from petitioner and $75,000 from Saudi Corp.

## Discussion

### A. Contentions of the Parties

Petitioner contends that $175,000 of the $250,000 that he received as a result of the Holiday Isle transaction is income to Dogwood Acres and not to him. Petitioner contends that the $175,000 was Dogwood Acres' share under a joint venture agreement that it had with petitioner and Saudi Corp.

Respondent contends that the $250,000 is gross income to petitioner and that petitioner improperly tried to avoid taxation of the payment by assigning his income to Dogwood Acres. Respondent contends that petitioner has not shown that a joint

venture existed between petitioner and Dogwood Acres, Harris or Saudi Corp. Respondent contends that petitioner has not shown that Dogwood Acres (and not petitioner) should be taxed on $175,000 of the $250,000 commission from the Holiday Isle transaction.

Petitioner bears the burden of proving that respondent's determinations are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Transactions between related taxpayers and between a closely held corporation and its shareholders are subject to close scrutiny. United States v. Ragen, 314 U.S. 513 (1942); Jaques v. Commissioner, 935 F.2d 104, 106 (6th Cir. 1991), affg. T.C. Memo. 1989-673; Tulia Feedlot, Inc. v. United States, 513 F.2d 800, 805 (5th Cir. 1975); Southeastern Canteen Co. v. Commissioner, 410 F.2d 615, 619 (6th Cir. 1969), affg. in part and revg. in part T.C. Memo. 1967-183.

B.   Whether $175,000 of the $250,000 Holiday Isle Commission Was Income to Petitioner

1.   Petitioner's Affidavit

The only evidence that petitioner had a joint venture with Dogwood Acres is an affidavit by petitioner. Petitioner did not testify. The parties stipulated that the statements in the affidavit would have been petitioner's testimony if he had testified at trial. In the affidavit, petitioner stated that the Holiday Isle transaction was a joint venture among himself,

Dogwood Acres, and Saudi Corp. He also stated that the transaction was originally a joint venture between Saudi Corp. and Dogwood Acres; however, on the advice of his certified public accountants, with whom he had done business for more than 25 years, that he and Dogwood Acres could become joint venturers with no adverse tax consequences, he included himself with Dogwood Acres in the transaction because he needed money for living expenses. Petitioner's affidavit states that Dogwood Acres was a joint venturer in the transaction but does not explain why Dogwood Acres was entitled to the $250,000 commission.

Petitioner's affidavit is vague and uncorroborated. Petitioner's affidavit did not identify the Holiday Isle transaction by name; he referred to it as "the property which was the subject of the William D. Barrow/Dogwood Acres, Inc, joint venture with Saudi Corporation". Petitioner's claim that Dogwood Acres participated in the Holiday Isle transaction is not credible because neither petitioner nor Harris told Yost about any involvement by petitioner or Dogwood Acres in the transaction. We do not give much weight to petitioner's affidavit because we find it incredible and it is unsupported by the record, and because petitioner was convicted in 1990 of violating 18 U.S.C. sections 2 and 1956(a)(3)(B) and (C) (laundering drug money), and 31 U.S.C. sections 5322(a) and 5324(3) (structuring a money transaction to avoid a cash

transaction report), both punishable by imprisonment in excess of 1 year.  Fed. R. Evid. 609; see Lovell & Hart, Inc. v. Commissioner, 456 F.2d 145, 148 (6th Cir. 1972), affg. per curiam T.C. Memo. 1970-335; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986) (we need not rely on uncorroborated testimony).

2.    Lack of Corroboration for Petitioner's Claim That He and Dogwood Acres Had a Joint Venture

The closing agent paid $250,000 to petitioner as a commission for the Holiday Isle transaction.  None of the Holiday Isle transaction documents refer to Dogwood Acres.  Petitioner offered no documents to corroborate his affidavit or details about the alleged joint venture.  There is no other evidence that Dogwood Acres was involved in the Holiday Isle transaction.  None of the parties to the Holiday Isle transaction (except petitioner) thought that Dogwood Acres was involved.  Dogwood Acres did not report any of the $250,000 commission as income.

Petitioner contends that the alleged joint venture between him and Dogwood Acres was an arm's-length transaction in which he engaged with the advice of tax professionals.  There is no evidence that petitioner's dealings with Dogwood Acres were at arm's length.  All of the owners of the stock of Dogwood Acres were members of petitioner's family.

Petitioner contends that Dogwood Acres received $175,000 ($100,000 from petitioner and $75,000 from Saudi Corp.) of the $250,000 as part of the consideration for services that he

provided to the parties to the Holiday Isle transaction. We are not convinced because petitioner does not allege nor is there any evidence that Dogwood Acres provided any services or that petitioner provided any services as an agent of Dogwood Acres.

3.  Conclusion

Gross income includes all income from whatever source derived unless excluded by law. Sec. 61. Income is taxed to the individual who earns it; the incidence of taxation cannot be shifted by an anticipatory arrangement. Lucas v. Earl, 281 U.S. 111, 114-115 (1930). We do not recognize petitioner's transfer to Dogwood Acres for Federal income tax purposes. Moline Properties, Inc. v. Commissioner, 319 U.S. 436, 439 (1943); Kimbrell v. Commissioner, 371 F.2d 897, 901-902 (5th Cir. 1967), affg. T.C. Memo. 1965-115. We conclude that the $250,000 commission that petitioner received for his services in the Holiday Isle transaction was taxable to him. Helvering v. Horst, 311 U.S. 112, 119-120 (1940); Lucas v. Earl, supra at 115. We sustain respondent's determination that the unreported commission income is attributable to petitioner.

To reflect concessions (e.g., relating to Mrs. Barrow's tax liability, see supra note 1) and the foregoing,

Decision will be entered

under Rule 155.