# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-1547

_____

Continental Casualty Company

*Plaintiff - Appellee*

v.

National Union Fire Insurance Company of Pittsburgh, PA

*Defendant*

The Valspar Corporation

*Intervenor Defendant - Appellant*

_____

No. 15-1623

_____

Continental Casualty Company

*Plaintiff - Appellee*

v.

National Union Fire Insurance Company of Pittsburgh, PA

*Defendant - Appellant*

The Valspar Corporation

*Intervenor Defendant*

Appeals from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: October 19, 2015
Filed: February 9, 2016
_____

Before RILEY, Chief Judge, SMITH and SHEPHERD, Circuit Judges.
_____

RILEY, Chief Judge.

This is a diversity case involving a maker of paints and other coatings—The Valspar Corporation, a Delaware and Minnesota citizen—and two of its insurers—Continental Casualty Company, an Illinois citizen, and National Union Fire Insurance Company of Pittsburgh, PA, a Pennsylvania and New York citizen. See 28 U.S.C. § 1332(a)(1), (c)(1). The district court[1] ordered National Union to pay part of the costs Continental incurred to defend Valspar against several lawsuits. Valspar intervened and now appeals because it has agreements with National Union under which Valspar might be required to reimburse anything National Union pays Continental. We affirm.

## I. BACKGROUND

Valspar bought primary general liability insurance from various companies over the years. In 2005 and 2006, Valspar faced lawsuits claiming damages from benzene in its products, triggering policies it bought from Continental and National

---

[1]The Honorable John R. Tunheim became Chief Judge of the United States District Court for the District of Minnesota on July 1, 2015.

Union, along with five other primary insurers. Continental agreed to defend Valspar, reserving its rights to have the other insurers contribute to paying the costs.

National Union refused to contribute, explaining it had a "fronting arrangement" with Valspar, which meant Valspar was responsible for its own defense costs and National Union was not obliged to defend it. Continental sued for declarations that National Union had a duty to defend Valspar and owed Continental National Union's share of the defense costs. Valspar intervened, arguing that in light of National Union's asserted right to pass its costs to Valspar, a nominal right of Continental to contribution from National Union would really be a right to contribution from Valspar, to which Continental was not entitled. National Union then cross-claimed for a declaration Valspar must indemnify National Union against any contribution Continental wins, as well as damages against Valspar for anticipatorily breaching its indemnity obligations.[2]

On cross-motions for summary judgment, the district court held National Union had a duty to defend Valspar and to contribute to the defense costs and Valspar did not have a duty to contribute to the defense costs directly (as opposed to potentially having to reimburse National Union). The district court therefore ordered National Union to pay a seventh of Continental's defense costs. Valspar appeals.[3] The district court granted Valspar's motion to enter partial final judgment, see Fed. R. Civ. P. 54(b), so we have jurisdiction under 28 U.S.C. § 1291.

---

[2]Nothing has happened on the cross-claims, and they are stayed pending this appeal.

[3]National Union also appeals but does not challenge the merits of the district court's decision. National Union just wants to be in position to have the judgment against it reversed if we agree with Valspar and hold Continental is not entitled to contribution.

## II.    DISCUSSION

Contract interpretation and the propriety of summary judgment are legal issues we review de novo.  See, e.g., Hot Stuff Foods, LLC v. Hous. Cas. Co., 771 F.3d 1071, 1074 (8th Cir. 2014).  No one disputes Minnesota law governs, so it does.  See BBSerCo, Inc. v. Metrix Co., 324 F.3d 955, 960 n.3 (8th Cir. 2003) (noting the law of the forum state applies by default if the parties do not raise the issue).

The parties agree the general rule under Minnesota law comes from Cargill, Inc. v. Ace American Insurance Co.: "a primary insurer that has a duty to defend, and whose policy is triggered for defense purposes, has an equitable right to seek contribution for defense costs from any other insurer who also has a duty to defend the insured, and whose policy has been triggered for defense purposes." Cargill, Inc. v. Ace Am. Ins. Co., 784 N.W.2d 341, 354 (Minn. 2010).  Valspar advances four main reasons why that rule does not apply between Continental and National Union in this case: (1) National Union did not have a duty to defend Valspar within the meaning of Cargill; (2) Valspar might ultimately need to pay National Union's contribution; (3) Continental agreed not to try to recover its defense costs from Valspar; and (4) Continental failed timely to pay some of the defense costs.  In the alternative, Valspar argues the amount National Union is required to contribute should account for amounts Valspar spent on its own defense.  We address each point in turn.

### A.    Continental's Right to Contribution from National Union
### 1.    National Union's Duty To Defend Valspar

After a thorough analysis of various documents relating to Valspar's policies with National Union, the district court held National Union assumed and retained a duty to defend Valspar.[4]  The bottom line was that the policies said "[National Union]

---

[4]Continental suggests the district court's analysis went further than necessary. According to Continental, the district court should not have considered documents

will have the right and duty to defend" Valspar against civil proceedings for damages, and National Union nowhere explicitly or implicitly disclaimed that duty. See, e.g., Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co., 825 N.W.2d 695, 704 (Minn. 2013) ("Where the language of an insurance policy 'is clear and unambiguous,' we effectuate the intent of the parties by 'interpret[ing] the policy according to plain, ordinary sense.'" (alteration in original) (quoting Carlson v. Allstate Ins. Co., 749 N.W.2d 41, 45 (Minn. 2008))). Provisions in several agreements did oblige Valspar to pay or reimburse National Union (or its claims adjuster) for some defense costs, but those obligations did not relieve National Union from its duty to defend, the district court explained, because the duty to defend is not only the "mere obligation to pay for defense costs."

Valspar challenges that last point—the district court's recognition of a duty to defend which is broader than the responsibility for paying defense costs. Valspar faults the district court for basing its understanding of the duty to defend on excess-carrier cases distinguishing that duty from insurers' duty to reimburse defense costs, because "[a]n excess insurer's duty to reimburse an insured . . . is, of course, very different from the broad duty to defend." Yet that was the district court's point:

---

other than the National Union policies themselves and express endorsements, because by their terms the policies "c[ould] be amended or waived only by endorsement issued by [National Union] and made a part of th[e] policy." And the district court could have stopped after finding a duty to defend triggered in a single policy, because under Minnesota law that would have been enough to justify National Union sharing equally in the defense costs. See Cargill, 784 N.W.2d at 354. Valspar protests that Continental cannot raise those points here because it did not cross-appeal. Valspar is mistaken. See, e.g., United States v. Am. Ry. Express Co., 265 U.S. 425, 435 (1924) ("[An] appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it."). Even so, we need not consider which agreements the district court should have reviewed because the district court's interpretation of the documents, as such, is not at issue on appeal.

Valspar taking responsibility for paying its own defense while leaving other aspects of its insurance arrangement with National Union in place was much like an insurer agreeing to reimburse its insured's defense costs but not actually to conduct the defense. So the district court cited cases explaining how the duty to defend includes more than paying for the defense to demonstrate that Valspar's responsibility for defense costs did not negate National Union's duty to defend. See, e.g., Liberty Mut. Ins. v. Pella Corp., 650 F.3d 1161, 1172 (8th Cir. 2011) (explaining the duty to defend "also requires the insurer to conduct and take control of the whole defense"). We see no problem with the district court's logic, and Valspar points to nothing suggesting the district court's analogy was inapt—such as any agreement under which Valspar's defense responsibilities extended beyond just paying costs.[5]

But even if National Union retained some part of its duty to defend, Valspar maintains, that "vestige" was not enough to justify contribution because it did not include a duty to pay defense costs. Under Cargill, an insurer has a right to equitable contribution when "more than one primary insurer covers the same risk and an insurer discharges *a common obligation also belonging to another insurer*." Cargill, 784 N.W.2d at 353 (emphasis added). According to Valspar, National Union did not share any "common obligation" discharged by Continental, "because an insurer with NO duty to pay defense costs clearly has no burden in common with insurers having a duty to pay them in full."

---

[5]Of course, as the district court noted, parties can and do agree to modify insurance policies to relieve insurers of the duty to defend. See, e.g., Genesis Ins. Co. v. BRE Props., 916 F. Supp. 2d 1058, 1073 (N.D. Cal. 2013) (describing an endorsement that provided "We [the insurer] have no duty to defend any claim or 'suit'" (emphasis omitted)); State Nat'l Ins. Co. v. County of Camden, Civ. No. 08-5128, 2012 WL 6652819, at *1 (D.N.J. Dec. 19, 2012) ("The [insured] shall be obligated to . . . provide an adequate defense . . . of any action for or notice of any actual, potential or alleged damages."). Valspar and National Union did not.

It is not quite right to say National Union did not need to pay defense costs. As the district court carefully reasoned—and Valspar does not dispute—although Valspar was ultimately financially responsible for certain defense costs under its agreements with National Union, it did not have to pay for its defense in the first instance. Rather, in different ways, various agreements obliged Valspar to indemnify, reimburse, or advance money to National Union (or the claims adjuster), which, by implication, actually paid for the defense. By the terms of the agreements, the basic arrangement was that National Union would pay the expenses and Valspar would pay National Union.[6] Far from being free from any obligation to pay for Valspar's defense, as Valspar asserts, National Union was on the hook unless and until Valspar performed or National Union exercised its rights.

Further, we reject Valspar's assumption that the phrase "common obligation" in Cargill means only an obligation to pay for the defense. The obligation of an insurer with a duty to defend—that is, the obligation shared with other insurers and discharged when one accepts the defense—is to "provide a defense," not just to pay for it. See Murray v. Greenwich Ins. Co., 533 F.3d 644, 648 (8th Cir. 2008). Thus, whenever the Minnesota Supreme Court identified the shared obligation justifying a right to contribution, it consistently referred to the "obligation *to defend*." See Cargill, 784 N.W.2d at 348, 351-52 (emphasis added); see also id. at 354 ("[W]e . . . hold that a primary insurer that has a duty to defend . . . has an equitable right to seek contribution for defense costs from any other insurer who also has a duty to defend the insured.").

---

[6]Whether the arrangement operated this way in practice is immaterial. We are concerned with National Union's legal obligations to Valspar, and in Minnesota, as elsewhere, courts "look to [a contract's] language to determine the parties' intent" and "assign unambiguous contract language its plain meaning," Savela v. City of Duluth, 806 N.W.2d 793, 796-97 (Minn. 2011).

## 2.     Valspar's Potential Liability to National Union

Valspar next argues "requiring Valspar to pay defense costs indirectly, through National Union," is the same as requiring Valspar to contribute to the defense, so it contradicts the district court's ruling that Continental has no right to contribution from Valspar. We disagree. The party Continental is suing matters.

The reason Continental cannot sue Valspar for contribution directly is that between the two of them, Continental was contractually required to defend the whole suit, so it has no right to ask Valspar to pay for part. See Wooddale Builders, Inc. v. Md. Cas. Co., 722 N.W.2d 283, 302 (Minn. 2006). Continental can sue National Union, on the other hand, because the Minnesota Supreme Court has decided insurers with overlapping duties to defend should share the cost of the defense, for the sake of fairness and to avoid incentivizing wasteful fights over who will defend. See Cargill, 784 N.W.2d at 352-53. The possibility that National Union might in turn recoup its expenses from Valspar does nothing to change the basis for that right as between Continental and National Union.

Aerojet-General Corp. v. Transport Indemnity Co., from which Valspar draws the proposition that "[a]n insured is not required to make such a contribution *together with insurers*," is not to the contrary. Aerojet-Gen. Corp. v. Transp. Indem. Co., 948 P.2d 909, 930 (Cal. 1998) (applying California law). First, as suggested by the quoted passage, Aerojet concerned insurers trying to recover defense costs from their insured, not another insurer. Id. at 929-30. And under the "fronting" policy at issue in Aerojet, as interpreted by the California Supreme Court, the insured "agree[d] to . . . defend itself" and the insurer "had no duty to defend whatsoever." Id. at 928-29. In light of those key differences, Aerojet simply does not speak to the situation presented in this case, where an insurer seeks contribution from *another insurer* that *did* have a duty to defend.

### 3. Continental's Agreement Not To Sue Valspar for Its Costs

Valspar also argues that by seeking contribution from National Union, Continental is violating an agreement with Valspar "not to seek recovery from Valspar for defense costs advanced by Continental in connection with the [claims underlying this case]" and "to waive any right of recovery from Valspar for such costs." That argument fails for the same simple reason as the last: Continental is suing National Union, not Valspar.[7] Continental is not currently seeking recovery from Valspar, nor is it exercising any right against Valspar. Just as a suit for damages against an insured is different from a direct suit against its insurer, cf. Camacho v. Todd & Leiser Homes, 706 N.W.2d 49, 56 (Minn. 2005), so a suit against National Union is different from a suit against Valspar, notwithstanding Valspar's potential obligation to indemnify National Union. And we find no support for Valspar's suggestion that a waiver of rights against one party also acts as a waiver of different rights against another, unrelated party.

### 4. Continental's Fulfillment of Its Duty To Defend

Last, Valspar argues equitable contribution is inappropriate because Continental has dirty hands. See Cargill, 784 N.W.2d at 354 ("[B]reach of a duty to defend precludes application of an equitable right to contribution."). According to Valspar, Continental breached its duty to defend by not reimbursing roughly $15,800 Valspar paid in attorney fees and allegedly delaying other payments. The district court held that even if Continental should have paid the $15,800—less than 3% of the over $560,000 Continental paid for the defense—and the delay was unreasonable, Continental's conduct did not rise to the level of a breach precluding equitable contribution, because "Continental did not fail to provide Valspar with a defense."

---

[7]Because we conclude Valspar's reliance on Continental's agreement is misplaced, we need not consider whether the agreement is unenforceable, as the district court concluded.

Valspar takes issue with what it sees as the district court's suggestion "only a complete failure to meet the duty to defend" would count as a breach, arguing "Minnesota authority" forecloses that approach. In Cargill, Valspar says, the Minnesota Supreme Court raised the possibility an insurer could have breached its duty to defend despite "timely offer[ing] to pay defense costs." Valspar misreads Cargill. The insurer in that case did offer to pay the full defense costs, but only if its insured signed a loan receipt agreement meant to give the insurer standing to sue the insured's other insurers for their shares (which it needed because Minnesota law did not yet recognize a right to equitable contribution). Id. at 344-45 & n.5. We understand that withholding and conditioning of the defense to be what the Minnesota Supreme Court thought might constitute a breach.

Here, by contrast, Continental agreed to provide a defense and reimbursed the vast majority of Valspar's defense costs.[8] We agree with the district court that equity does not require Continental to bear the entire cost of Valspar's defense. Continental's duty was to defend Valspar. It did so. Because a relatively minor fee dispute arising out of that defense could not change that, even if Continental turned out to be wrong, we reject Valspar's contention that the district court should have answered the underlying factual questions of whether the unpaid fees and Continental's delay were reasonable.

### B. Amount of National Union's Contribution

Having concluded Continental is entitled to equitable contribution from National Union, we reach Valspar's alternative argument that the calculation of National Union's contribution should take into account defense costs Valspar paid

---

[8]Continental even appears to have gone through an appeal and review process with Valspar, after which Continental paid some amounts it initially refused to cover.

out of pocket and for which it has not been reimbursed.[9]  Valspar's position reflects a misunderstanding of the nature of equitable contribution among insurers.  The point of contribution is to make sure all insurers with a duty to defend share equitably in defense costs paid by any of them.  See Cargill, 784 N.W.2d at 353-54.  Contribution is a mechanism for fairly allocating the costs incurred by insurers in discharging their overlapping obligations.  As such, it is unaffected by amounts paid by the insured (or anyone else) unless an insurer reimburses or becomes liable for them.[10]  If the costs Valspar paid were covered by its policies with Continental or other insurers, Valspar's remedy is to exercise its contractual rights to reimbursement (at which point the insurer that paid could potentially seek contribution from the others).  If not, there is no reason to include the costs in the amount to be spread among the insurers.

The essence of Valspar's argument is, practically speaking, "Valspar is the party that will be contributing to Continental's defense costs," so it is only fair to give Valspar credit for the costs it already paid.  We first note there has not been any determination that the insurers were actually responsible for the costs Valspar paid, either by a court or an insurer agreeing to reimburse them.  Further, whatever the merits of overlooking technicalities for the sake of equity and efficiency,[11] if this case

---

[9]Valspar wants the amount it paid—roughly $68,000—included in the total cost of the defense and then credited against National Union's one-seventh share, which would have the end result of reducing the judgment against National Union by six-sevenths of what Valspar paid, or about $58,000.

[10]Because Valspar agrees its payment of the amounts in question "had nothing to do with the National Union program," we need not address the district court's suggestion that the analysis might be different if the payments were "attributable to National Union's duty to defend."

[11]Valspar's preferred approach would reach the same bottom line as if Valspar paid all of what National Union owes, Valspar sought reimbursement for the $68,000 it paid, Continental or another insurer reimbursed it, that insurer got the others,

were about an award against Valspar, the judgment is against *National Union*—indeed, the question of whether Valspar needs to indemnify National Union is still pending. We see no equitable reason to treat National Union as if it already paid anything toward Valspar's defense.

## III. CONCLUSION

National Union had a duty to defend Valspar and therefore has an equitable obligation to contribute to paying the costs of the defense. Neither Valspar's agreement to pay National Union's costs, Continental's agreement not to recover defense costs from Valspar, nor Continental's alleged failure to pay a small fraction of the costs defeats Continental's right to contribution from National Union. These are distinct obligations. And National Union's share of the defense costs paid by the insurers is unaffected by amounts paid by Valspar. We affirm and remand for further proceedings.

_____

---

including National Union, to contribute to that payment, and Valspar indemnified National Union's share.