# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 23-1523

———————————————

Meyer, Borgman & Johnson, Inc.

*Appellant*

v.

Commissioner of Internal Revenue

*Appellee*

——————————

United States Tax Court

——————————

Submitted: March 13, 2024
Filed: May 6, 2024

——————————

Before BENTON, ERICKSON, and KOBES, Circuit Judges.

——————————

BENTON, Circuit Judge.

Meyer, Borgman, & Johnson, Inc., a structural engineering firm, creates construction documents of the structural design for building projects. MBJ sought research tax credits for its expenses in creating the designs. MBJ claimed about $190,000 in tax credits for the years ending September 30, 2010, September 30, 2011, and September 30, 2013. The Commissioner denied the credits. The United

States Tax Court[1] affirmed. Having jurisdiction under 26 U.S.C. § 7482(a)(1), this court affirms.

On summary judgment, the Tax Court ruled that MBJ's research was "funded" within the meaning of 26 U.S.C. § 41(d)(4)(H), meaning that MBJ did not qualify for the credits. "This court reviews de novo a grant of summary judgment." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). "Summary Judgment pursuant to Tax Court Rule 121 is derived from Rule 56 of the Federal Rules of Civil Procedure and is interpreted consistently with interpretations of Rule 56." *Klein v. Commissioner*, 899 F.2d 1149, 1151 (11th Cir. 1990), *quoting Long v. Commissioner*, 757 F.2d 957, 959n.5 (8th Cir. 1985). "Contract interpretation and the propriety of summary judgment are legal issues we review de novo." *Cont'l Cas. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 812 F.3d 1147, 1149 (8th Cir. 2016).

This court reviews de novo the Tax Court's legal conclusions; findings of fact are upheld unless clearly erroneous. *Ibrahim v. Commissioner*, 788 F.3d 834, 836 (8th Cir. 2015). *See Zavadil v. Commissioner*, 793 F.3d 866, 869 (8th Cir. 2015), *quoting INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992) ("[A]n income tax deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer.").

I.

The research credit is limited to "qualified research expenses." **26 U.S.C. § 41 (a)(1)**, **(b)**. Qualified research is defined, as relevant here, as research "undertaken for the purpose of discovering information" that is (i) "technological in nature" and (ii) "is intended to be useful in the development of a new or improved business component of the taxpayer." **§ 41 (d)(1)(B)**. Expressly excluded from the

---

[1]The Honorable Mark V. Holmes, United States Tax Court Judge.

definition of qualified research is: "Any research to the extent funded by any grant, contract, or otherwise by another person (or governmental entity)." **§ 41(d)(4)(H)**.

The term "funded" is defined in the Treasury regulations. "To determine the extent to which research is so funded, § 1.41-4A(d) applies." **Treas. Reg. § 1.41-4(c)(9)**. Under § 1.41-4A(d), most importantly here, the taxpayer can get the credit if payment for the research is "contingent on the success of the research." **Treas. Reg. § 1.41-4A(d)(1)**. *See generally Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1374–75 (Fed. Cir. 2000) (discussing when a taxpayer's research will be considered funded).

## II.

MBJ argues that the Tax Court erred because (1) MBJ's right to payment was contingent on the success of its research, and (2) MBJ's contracts had inspection, acceptance, and quality assurance provisions.

MBJ claims its payments were contingent on the success of its research because "under each of its contracts, MBJ was required to create a design that included all of the items the owner required, complied with all of the pertinent codes and regulations, would result in a structurally sound building without being so over-engineered as to compromise the construction budget, and was sufficiently detailed that a contractor could follow it and successfully construct it." MBJ highlights provisions that allow termination for not substantially performing, such as: "This Agreement may be terminated by either party upon not less than seven days' written notice should the other party fail substantially to perform in accordance with the terms of this Agreement through no fault of the party initiating the termination."

According to MBJ, its contracts are like the one approved in *Fairchild Industries, Inc. v. United States*, 71 F.3d 868, 874 (Fed. Cir. 1996). The court there held that the taxpayer's research was not funded and thus qualified for the credit. "The contract contained over 1,000 pages of technical specifications that required

Fairchild to meet specific design, construction, quality, and performance standards." *Id.* at 870. The court emphasized that Fairchild "remained at risk for each line item until the research was successfully completed and the product of the research was accepted." *Id.* at 873.

MBJ's contracts have the general economic risk of investing resources without a commitment to be paid. *See Dynetics, Inc. & Subsidiaries v. United States*, 121 Fed. Cl. 492, 515-16 (2015). This risk, however, is not contingent on the success of the research itself. As stated by the Tax Court, none of the contracts expressly or by clear implication make payment contingent on the success of MBJ's research. MBJ's clients contracted for design services. MBJ agreed to adhere to professional standards; the contracts require it to "perform its services as expeditiously as is consistent with professional skill and care and the orderly progress of the Project." Yet, requirements to comply with pertinent codes and regulations or to perform pursuant to a general standard of care does "not mandate success." *Geosyntec Consultants, Inc. v. United States*, 776 F.3d 1330, 1341 (11th Cir. 2015). There is a difference between "successful performance"—meeting detailed, barometers of success—and "proper performance"—providing deliverables pursuant to a general professional standard of care and promising work free from negligence, error, or defects. *Id.*

In *Geosyntec*, the Eleventh Circuit held the contracts at issue were funded and thus did not qualify for the credit. *Id.* at 1343. For one of the contracts, the court noted that "the design was left almost entirely to Geosyntec's professional expertise, informed by Geosyntec's own research and subject to general (and, at times, passive) requirements." *Id.* at 1340. Many of MBJ's contracts were similar, saying MBJ was "responsible for methods and means used in performing its services" consistent with the general standard of care. Further, MBJ does not cite any provisions requiring it to refund payments already received if it failed to meet specific benchmarks. *See Fairchild*, 71 F.3d at 871 ("The financing provisions of the contract provided that, if Fairchild was making satisfactory progress, the Air Force would pay bimonthly *refundable* advances, termed 'progress payments.'") (emphasis added).

In a Fifth Circuit case, the taxpayer argued that research was not funded because payments were contingent on delivering a "result or product." ***United States v. Grigsby***, 86 F.4th 602, 618 (5th Cir. 2023). The Fifth Circuit disagreed, holding that the taxpayer improperly conflated "contracts for products or services" with "amounts payable under any agreement that are contingent on the success of the research." ***Id.*** at 619. That court also rejected the argument that the "inherently risky" nature of fixed price contracts made them per se not funded. ***Id.*** Because the payments under the contract there were not contingent on the success of research, the research there was funded and did not qualify for the credit. ***Id.*** at 619–20.

Emphasizing that its contracts have a fixed price, MBJ cites a Tax Court order stating: "In general, fixed priced contracts have been considered unfunded research, qualifying the contractor for the credit." ***Populous Holdings, Inc. v. Commissioner***, 2019 WL 13032526, at *2 (T.C. Dec. 6, 2019) (non-precedential order by Tax Ct. R. 50(f)). A fuller statement of the proposition, in the Fifth Circuit's words, is: "Because fixed price contracts may not fully compensate researchers if their research is unsuccessful, the researcher bears the financial risk of failure, and fixed price contracts are more likely to be deemed unfunded." ***Grigsby***, 86 F.4th at 619.

MBJ stresses that its contracts were not only fixed price arrangements, but had inspection, acceptance, and quality assurance provisions. Many of MBJ's projects had multiple phases, with the client approving the design documents before the project proceeds to the next phase. In *Geosyntec*, the company "was required to submit monthly progress invoices for all work performed during the previous calendar month" and the client "could dispute items in submitted invoices for any reason, including Geosyntec's failure to accurately account for its work or where WM suspected the work was defective or negligently performed." ***Geosyntec***, 776 F.3d at 1342 (internal quotations omitted). "However, the item was only temporarily deleted and, once the dispute was settled, [the client] was obligated to pay the invoiced amount." ***Id.***

-5-

Here, as the Tax Court explained, while MBJ's contracts provide a method of acceptance, the provisions lack the specificity of *Fairchild*, where the taxpayer "had to succeed at each step" of its research to be paid. **Geosyntec**, 776 F.3d at 1340. As the Tax Court found, MBJ's contracts lack the express terms that courts have identified as important to establish payment was contingent on the success of the research. *See* **Dynetics**, 121 Fed. Cl. at 505 (holding that the research was funded; although the contract explicitly provided the "right to inspect and test all work called for by the contract," it "did not include rejection language; nor did it limit payment to work the government accepted"). *See generally* **Little Sandy Coal Co., Inc. v. Commissioner**, 62 F.4th 287, 298 (7th Cir. 2023) (holding that "qualified research" does not include "testing to determine if the design of the product is appropriate," cannot just be "any design or modification to meet customer specifications," but must remove uncertainty "related to the 'development or improvement' of the product").

The Tax Court correctly ruled that MBJ's research did not merit the research tax credit.

* * * * * * *

The judgment is affirmed.

_____