# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1053

_____

Larry Zavadil; Diane Zavadil,

*Petitioners - Appellants,*

v.

Commissioner of Internal Revenue,

*Respondent - Appellee.*

_____

Appeal from The United States Tax Court

_____

Submitted: October 8, 2014
Filed: July 16, 2015

_____

Before LOKEN, COLLOTON, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Larry and Diane Zavadil and the Internal Revenue Service dispute the propriety of certain deductions that the Zavadils claimed on their personal tax returns in 2004 and 2005. The Service issued a notice of deficiency, and the dispute was aired in the United States Tax Court. The tax court ruled for the Zavadils in part and for the

Service in part.  The Zavadils appeal the adverse portion of the decision, and we affirm.

## I.

In 1981, Larry Zavadil organized American Business Forms, Inc.,which did business as American Solutions for Business.  American Solutions sold business supplies and promotional products.  Zavadil was the sole owner of the company until 2000, when he sold it to an employee stock ownership plan.  In exchange for all outstanding shares of American Solutions, the company provided Zavadil with a $28,760,000 note, payable with interest in twenty annual installments.  Zavadil thereafter served without compensation as the company's chief executive officer and as a member of the board of directors.

In 2004 and 2005, Zavadil had a financial arrangement with American Solutions under which the company paid Zavadil's personal expenses and Zavadil later reimbursed the company by personal check.  American Solutions recorded Zavadil's personal expenses on a ledger.  To generate a ledger entry, Zavadil charged an item to his American Solutions credit card or instructed an employee to direct the finance department to issue a check.  As a condition of extending credit to American Solutions, the company's creditors required that all ledger accounts, including Zavadil's, must be paid off at the end of each month.  To comply, Zavadil reimbursed the company on a monthly basis by personal check.

At the end of certain months in 2004 and 2005, however, Zavadil's personal bank account had insufficient funds to reimburse American Solutions for the amount recorded on the ledger.  For those months, Zavadil and American Solutions employed a system of advances that allowed the ledger to reflect a zero balance at the end of the month.  At the end of each month, Zavadil wrote a personal check to the company, and the company brought the ledger balance to zero.  At the beginning of the next

month, however, American Solutions advanced funds to Zavadil's personal bank account to cover some or all of the amount of the check, recorded the advance as an expense on the ledger, and then cashed the personal check received at the end of the previous month.

The tax court found that the company's advances were used to pay some or all of Zavadil's ledger balance in four months in 2004 and three months in the first half of 2005, but that as of December 31, 2004, and June 30, 2005, Zavadil fully reimbursed American Solutions for all expenses previously recorded on his ledger. The court also found that advances from American Solutions were used to pay some or all of the ledger balance in each month from July through November 2005. The ledger balance and advance for each month from July through November 2005 was as follows:

| Month | Ledger balance and amount of Zavadil's personal check | Amount American Solutions advanced before cashing check |
| --- | --- | --- |
| July | $1,429,372 | $587,000 |
| August | $1,428,517 | $62,000 |
| September | $1,258,723 | $1,371,000 |
| October | $1,579,358 | $1,302,000 |
| November | $1,813,757 | $1,800,000 |

For December 2005, the record did not show whether American Solutions advanced funds in January 2006, but the court found that Zavadil's bank account showed a deposit of $1,610,000 on January 3, 2006, the same date on which the bank paid Zavadil's check for $1,508,316 to cover the December 2005 ledger balance.

-3-

Zavadil used the ledger system in 2004 and 2005 to make three categories of disbursements that were later disputed by the Internal Revenue Service. In their tax returns, the Zavadils claimed charitable deductions for 2004 and 2005. They claimed nonpassive losses for "unreimbursed expenses," in the amounts of $150,000 in 2004 and $75,000 in 2005, paid to a company called National Business Development & Finance, which we will call National Business. And they listed other "unreimbursed expenses" of $35,800 in 2004 paid to Becky DePree, the widow of Zavadil's former colleague Dusty DePree.

Zavadil asserts that the payments to National Business were compensation for consulting services that National Business provided to the Zavadils' other wholly-owned businesses. Zavadil contends the payments to DePree were a death benefit for Dusty that American Solutions had agreed to pay, but which the company later refused to fund.

In 2010, the Internal Revenue Service issued the Zavadils a notice of deficiency for the 2004 and 2005 tax years, disallowing $358,472 of charitable deductions claimed in 2004 and $333,672 of the charitable deductions claimed in 2005. The Service also disallowed the Zavadils' claims for the payments to DePree and National Business.

The Zavadils challenged the notice of deficiency in the tax court. As relevant to this appeal, the tax court ruled in favor of the Zavadils on charitable contributions made prior to July 2005, ruling that they were deductible because Zavadil reimbursed American Solutions for those contributions and thus bore the economic burden. The tax court, however, disallowed charitable deductions made from July 2005 through December 2005, because the Zavadils did not demonstrate that they—not American Solutions—bore the economic burden of those contributions. Because the record did not establish that Zavadil bore the economic burden of paying the entire ledger balance in any of those months, the court found that the Zavadils failed to prove

"what portion, if any, of the charitable contributions made after June 2005 Mr. Zavadil effectively paid with his own funds and not funds advanced by [American Solutions]." The court also found no evidence that the ledger account balance at the end of 2005 represented *bona fide* indebtedness of Zavadil.

The tax court disallowed the Zavadils' claimed unreimbursed expenses for payments to National Business, finding they failed to introduce credible evidence regarding the nature and purpose of the payments. The tax court also disallowed the claimed deduction for the payments to DePree, concluding that Zavadil failed to prove he made the payments to promote his business. The tax court then assessed deficiencies against the Zavadils: $101,674 with a $20,334.80 penalty for tax year 2004, and $113,668 with a $22,733.60 penalty for tax year 2005.

## II.

Generally, "an income tax deduction is a matter of legislative grace and . . . the burden of clearly showing the right to the claimed deduction is on the taxpayer." *INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84 (1992) (internal quotation omitted). The burden shifts to the Service in some circumstances, *see* 26 U.S.C. § 7491(a)(1); *Blodgett v. Comm'r*, 394 F.3d 1030, 1035 (8th Cir. 2005), but the Zavadils do not dispute the tax court's determination that the burden in this case remains with them. This court reviews the tax court's legal conclusions *de novo* and its factual conclusions for clear error. *DKD Enters. v. Comm'r*, 685 F.3d 730, 734 (8th Cir. 2012).

## A.

We consider first the charitable deductions. 26 U.S.C. § 170(a) provides a deduction for "any charitable contribution . . . payment of which is made within the

taxable year." To qualify for a deduction, the charitable contribution must be "actually paid during the taxable year." Treas. Reg. § 1.170A-1(a).

The parties agree that a taxpayer may make a deductible contribution with borrowed money, and that such a payment is deductible in the year the payment is made, not when the loan is repaid. Rev. Rul. 78-38, 1978-1 C.B. 67, 68; *see Crain v. Comm'r*, 75 F.2d 962, 964 (8th Cir. 1935); *Granan v. Comm'r*, 55 T.C. 753, 755 (1971). A contribution made by credit card, for example, is deductible by the cardholder when charged, because the contribution "creates the cardholder's own debt to a third party." Rev. Rul. 78-38, 1978-1 C.B. at 68. A charitable contribution also may be effected through an agent acting on behalf of the donor. *Weitz v. Comm'r*, 56 T.C.M. (CCH) 1422, 1426-27 (1989); *Skripak v. Comm'r*, 84 T.C. 285, 318 (1985); Rev. Rul. 80-335, 1980-2 C.B. 170. The economic substance of a transaction, rather than its form, determines the proper characterization. *See Weitz,* 56 T.C.M. (CCH) at 1425; *see also Estate of Sachs v. Comm'r*, 856 F.2d 1158, 1164 (8th Cir. 1988). Under this framework, the tax court found that Zavadil properly claimed charitable deductions for amounts that American Solutions contributed in 2004 and the first half of 2005, because Zavadil had fully reimbursed the company as of December 31, 2004, and June 30, 2005.

Zavadil contends that he also is entitled to deduct the charitable contributions that he caused American Solutions to make from July 2005 through December 2005. The record does not establish that Zavadil fully reimbursed the company for these contributions, but Zavadil argues that he is entitled to deductions, because he was required to reimburse the company for those contributions. The tax court rejected Zavadil's plea, finding that he presented "no credible evidence" that the payments from July through December 2005 represented "bona fide indebtedness" for which the Zavadils were required to repay American Solutions. The court found that the company's practice of advancing Zavadil the funds he used to pay off his monthly ledger balance was a "circular flow of funds [that] resulted in [the company's]

assumption of most, if not all, of the economic burden of the charitable contributions . . . after June 2005."

Zavadil submits that the finding was clear error and relies principally on three pieces of evidence: (1) his repayment of advances made by American Solutions *before* July 2005; (2) his testimony that he was required to repay the company, and that the company's third-party lenders required that his "ledger would be at zero at the end of every fiscal month"; and (3) testimony of Colette Carlson, Zavadil's accountant, that Zavadil would "bear the economic cost" of the expenses reflected in the ledger by paying the balance at the end of each month. Zavadil also argues American Solutions' awareness that Zavadil had the means to repay the advances—based on the company's obligation to make annual payments to Zavadil on the $28,760,000 note—is evidence of an agreement between Zavadil and the company that Zavadil would repay the advances.

The court's finding that Zavadil did not incur *bona fide* indebtedness to American Solutions for ledger balances between July and December 2005 was not clearly erroneous. There was no written agreement between American Solutions and Zavadil that required repayment, no evidence that interest was charged, no sign of collateral to secure payment, and no record of a due date. *See Rolwing-Moxley Co. v. United States*, 589 F.2d 353, 355 (8th Cir. 1978) (per curiam); *Caligiuri v. Comm'r*, 549 F.2d 1155, 1157 (8th Cir. 1977); *Rife v. Comm'r*, 356 F.2d 883, 888 (5th Cir. 1966). The tax court was not required to credit Zavadil's say-so in the face of conflicting circumstantial evidence. *See Blodgett v. Comm'r*, 394 F.3d at 1036; *Banks v. Comm'r*, 322 F.2d 530, 537 (8th Cir. 1963).

That Zavadil repaid all funds in the first half of 2005 did not necessarily show that he was obliged to do so, especially when there was no evidence that he did so in the second half. The court permissibly declined to accept accountant Carlson's testimony, given that the system of advances undermined the claim that Zavadil

-7-

actually repaid the company in full at the end of every month. The requirement imposed by creditors that the company show a zero ledger balance at the end of each month did not exclude the possibility that American Solutions nonetheless bore the economic burden by reimbursing Zavadil for some or all of his end-of-month payments through advances at the beginning of the next month. And the company's obligation to make installment payments to Zavadil in exchange for his sale of the company does not establish that Zavadil was required to repay the advances. Zavadil points to no evidence that the company deducted the advances from its installment payments on the note, or that the note was designated as collateral for the advances. It was not clear error for the tax court to find Zavadil's evidence wanting.

B.

Zavadil next asserts the tax court erred in denying his deduction for the $35,800 he paid to Becky DePree in 2004. Zavadil claimed this amount as a business expense under 26 U.S.C. § 162(a). He says the payments were made to DePree as a death benefit for her late husband, Dusty, who was Zavadil's former colleague at American Solutions.

To qualify for a deduction under § 162(a), a taxpayer must show that the expense was (1) "paid or incurred during the taxable year," (2) for "carrying on any trade or business," and (3) an "ordinary" and "necessary" expense. *Comm'r v. Lincoln Sav. & Loan Ass'n*, 403 U.S. 345, 352 (1971) (internal quotation omitted). Generally, a taxpayer is not entitled to deduct his payment of another party's business expense, even when the payments are made for the development of the taxpayer's reputation and goodwill. *Welch v. Helvering*, 290 U.S. 111, 114 (1933).

The tax court has recognized an exception to the general rule. A taxpayer's payment of another's business expense is deductible, if (1) the taxpayer's primary motive was to "protect or promote" *his own* business, and (2) the expense was an

-8-

ordinary and necessary expense of *the taxpayer's* trade or business. *Lohrke v. Comm'r*, 48 T.C. 679, 688 (1967); *see Bone v. Comm'r*, 324 F.3d 1289, 1295 (11th Cir. 2003); *Capital Video Corp. v. Comm'r*, 311 F.3d 458, 464 (1st Cir. 2002). The tax court has ruled that, in certain circumstances, a taxpayer may satisfy the first element of this exception—motive to "protect or promote" his own business—by showing that his purpose was to protect his own pre-existing "standing and reputation" in his business community. *See Conley v. Comm'r*, 36 T.C.M. (CCH) 1644, 1648 (1977); *see also Allen v. Comm'r*, 283 F.2d 785, 790-91 (7th Cir. 1960). The burden is on the taxpayer to show "a direct nexus between the purpose of the payment and the taxpayer's business or income producing activities." *Dietrick v. Comm'r*, 881 F.2d 336, 339 (6th Cir. 1989) (internal quotation omitted); *see Bone*, 324 F.3d at 1296.

Zavadil argues that he made the payments to DePree for the purpose of protecting his and Mrs. Zavadil's business reputations. The tax court found to the contrary. The court reasoned that Zavadil promised to pay the death benefit to DePree as additional compensation for Dusty's work at American Solutions. After the employee stock ownership plan acquired the company, the company declined to continue making payments to DePree. The board of directors concluded that the death benefit was Zavadil's personal obligation, and that the new owner should not be burdened with the payments on top of its other debt. The tax court also observed that Zavadil never claimed in testimony that his motive for the continued payments was to protect his business reputation. The court thus concluded that the Zavadils failed to establish that the payments were deductible business expenses.

Zavadil responds that he paid the death benefit in order to fulfill an obligation to "the family of one of [American Solutions'] most well-loved, well-known, and longest-serving employees," and that he thereby acted to protect the Zavadils' business reputations. In support, he points to testimony that he was the uncompensated CEO of American Solutions, that Mrs. Zavadil owned a company

engaged in the same business as American Solutions, and that Dusty had been a valuable salesperson and vice president at American Solutions. Zavadil also asserts that some of Dusty's work had been uncompensated, and that he initially pledged to pay the death benefit "to do something for Dusty for all of his work and all of his effort."

Zavadil never testified, however, that he continued to pay DePree because he was concerned about his business reputation. Zavadil did not testify about his reasons for continuing to pay DePree after American Solutions decided to cease the payments, how the payments affected his business reputation, or how non-payment might damage the Zavadils' reputation. Zavadil's testimony about motive speaks only to his intention to compensate Dusty for his previous work. It does not address whether Zavadil was motivated by a desire to protect his business reputation when he paid DePree. In light of the record as a whole, the tax court did not clearly err in finding that Zavadil failed to prove that his payments to DePree were deductible.

C.

Zavadil's final contention is that the tax court erred by disallowing his claimed deduction for $225,000 in payments to National Business. The tax court found that the Zavadils introduced no credible evidence regarding the nature and purpose of the payments, and thus denied the claim that they were ordinary and necessary business expenses.

Zavadil concedes that the only evidence to support the deduction was his testimony about the nature of the payments. Zavadil testified that Curt Briggs, National Business's owner, provided consulting services to Zavadil at unspecified times in the past. He asserted that the payments to National Business in 2004 and 2005 were in exchange for "a lot of personal things for [Zavadil], on [his] personal side, and personal investments," including consulting services for the Zavadils' other

businesses. But Zavadil provided only vague testimony that the payments were for consulting services. Briggs did not testify, and no documents were introduced about consulting services.

The tax court reasonably found that Zavadil did not explain the nature of the consulting services in sufficient detail to establish that the payments were for carrying on Zavadil's trade or business or that the amounts were ordinary and necessary business expenditures. Given the paucity of evidence, it was not clearly erroneous for the tax court to find that the Zavadils failed to satisfy their burden on this point.

\* \* \*

The judgment of the tax court is affirmed.

_____